State *v.* Ambs.

⎯⎯⎯ ⁘ ⎯⎯⎯

### The State, Respondent, *vs.* Ambs, Appellant.

1. The laws enforcing the observance of Sunday, (R. C. 1845, tit. Crimes and Punishments, secs. 31, 32, 33 and 34,) are constitutional.
2. A dram-shop license does not authorize the holder to sell liquor on Sunday.
3. Keeping open an ale house and selling ale on Sunday are two distinct offences, under the 34th section of the act above referred to. A defendant, who pleads guilty to an indictment containing one count for each offence, is subject to two fines.

### *Appeal from St. Louis Criminal Court.*

Indictment for keeping open an ale house on Sunday, and for selling ale on the same day. The indictment contained two counts, one for keeping open and the other for selling. The defendant pleaded in bar, that, at the time of committing the acts mentioned in the indictment, he was licensed to keep a dram-shop. A demurrer to this plea being sustained, he pleaded guilty to the indictment, reserving the right to move in arrest of judgment for its insufficiency. His motion in arrest was overruled, and he was fined five dollars upon each count, whereupon he appealed to this court. The cause was submitted on printed arguments by Mr. R. M. Field, and Messrs. Delafield & Kribben, for appellant, and on a written argument by Mr. Clover, for the State.

Mr. *Field,* (with whom were *Delafield & Kribben,*) for appellant, argued the fo'lowing points: I. The defendant's license exempted him from the law prohibiting the sale of ale on Sunday. 1. The law on which the indictment is grounded is applicable to unlicensed persons only. 2. If applied to li-

censed persons, it violates that clause of the constitution of the United States, which prohibits all state legislation impairing the obligation of contracts. II. The court below erred in inflicting a double penalty. 1. Only one offence was charged in the indictment. (*Crepps* v. *Durden*, Cowp. Rep. 640. *State* v. *Cottle*, 15 Maine Rep. 473. *State* v. *Stinson*, 17 Maine, Rep. 154. *State* v. *Churchill*, 25 Maine Rep. 306. *Tracy* v. *Perry*, 5 N. H. Rep. 504. *Kilbourn* v. *State*, 9 Conn. Rep. 560. *Washburn* v. *McInwy*, 7 Johns. Rep. 134. *People* v. *Adams*, 17 Wend. Rep. 475.) 2. This error of the court below is incurable. This court cannot impose a single penalty; for it would be exercising original and not appellate jurisdiction. Nor can it remand the case that the error may be corrected below. A case can only be remanded for a *new trial*. (Crim. Prac. art. 8, §17.) III. The whole system of laws designed to enforce the observance of the Christian Sabbath is unconstitutional. 1. They interfere with the rights of conscience. 2. They impose a form of religious worship. 3. They give a preference to one religious sect over all others.

Mr. *Clover*, for the State, argued the following points : I. The defendant's license was subject to the laws in force when it was granted. (*Lambert* v. *The State*, 8 Mo. Rep. 493.) II. A distinct offence is charged in each count of the indictment to which the defendant has pleaded guilty, and the court did not err in imposing two fines. If, however, there was error in this, this court will not reverse, but will correct the error by imposing a single fine. III. The law under which the defendant was indicted is constitutional. (*Specht* v. *The Commonwealth*, 8 Barr, 326. *The City of Cincinnati* v. *Rice*, 15 Ohio, 230. *The Commonwealth* v. *Wolf*, 3 Serg. & R. 50. *The State* v. *Williams*, 4 Iredell, 400.)

SCOTT, Judge, delivered the opinion of the court.

Peter Ambs was indicted for keeping open an ale house on Sunday, and for selling intoxicating liquors on the same day. Both offences were included in one indictment, though in sepa-

rate counts. He was convicted and fined on each count by one judgment. From this judgment, he appealed to this court.

1. The main question argued in the briefs of the counsel in this case was, the constitutionality of the law exacting the observance of Sunday, as a day of rest. It was maintained for the appellant, that the laws enjoining an abstinence from labor on Sunday, under a penalty, and prohibiting the opening of ale and beer houses, and selling intoxicating liquors on that day, were dictated by religious motives, and consequently could not be sustained, being inconsistent with the state constitution, which ordains that all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; that no man can be compelled to erect, support or attend any place of worship; that no human authority can control or interfere with the rights of conscience; that no person can ever be hurt, molested or restrained in his religious professions or sentiments, if he do not disturb others in their religious worship; that no preference can ever be given by law to any sect or mode of worship.

The statute compelling the observance of Sunday, as a day of rest from wordly labor, expressly provides, that it shall not extend to any person who is a member of a religious society, by whom any other than the first day of the week is observed as a Sabbath, so that he observed such Sabbath.

Those who question the constitutionality of our Sunday laws, seem to imagine that the constitution is to be regarded as an instrument framed for a state composed of strangers collected from all quarters of the globe, each with a religion of his own, bound by no previous social ties, nor sympathizing in any common reminiscences of the past; that, unlike ordinary laws, it is not to be construed in reference to the state and condition of those for whom it was intended, but that the words in which it is comprehended are alone to be regarded, without respect to the history of the people for whom it was made.

It is apprehended, that such is not the mode by which our organic law is to be interpreted. We must regard the people

for whom it was ordained. It appears to have been made by Christian men. The constitution, on its face, shows that the Christian religion was the religion of its framers. At the conclusion of that instrument, it is solemnly affirmed by its authors, under their hands, that it was done in the year of our Lord one thousand eight hundred and twenty — a form adopted by all Christian nations, in solemn public acts, to manifest the religion to which they adhere.

Long before the convention which framed our constitution was assembled, experience had shown that the mild voice of Christianity was unable to secure the due observance of Sunday as a day of rest. The arm of the civil power had interposed. The convention sat under a law exacting a cessation from labor on Sunday. (1 vol. Edward's Compilation, 302.) The journal of the convention will show that this law was obeyed by its members as such, by adjournments from Saturday until Monday. In the tenth section of the fourth article of the constitution, it is provided that, if the governor does not return a bill within ten days, (Sundays excepted,) it shall become a law without his signature. Although it may be said that this provision leaves it optional with the governor, whether he will consider bills or not on Sunday, yet, regard being had to the circumstances under which it was inserted, can any impartial mind deny but that it contains a recognition of the Lord's day, as a day exempt by law from all worldly pursuits. The framers of the constitution, then, recognized Sunday as a day to be observed, acting themselves under a law which exacted a compulsive observance of it. If a compulsive observance of the Lord's day, as a day of rest, had been deemed inconsistent with the principles contained in the constitution, can any thing be clearer than, as the matter was so plainly and palpably before the convention, a specific condemnation of the Sunday law would have been engrafted upon it. So far from it, Sunday was recognized as a day of rest, when, at the same time, a cessation from labor on that day was coerced by a penalty. They, then, who engrafted on our constitution the prin-

ciples of religious freedom therein contained, did not regard the compulsory observance of Sunday as a day of rest, a violation of those principles. They deemed a statute compelling the observance of Sunday necessary to secure a full enjoyment of the rights of conscience. How. could those who conscientiously believe that Sunday is hallowed time, to be devoted to the worship of God, enjoy themselves in its observance amidst all the turmoil and bustle of worldly pursuits, amidst scenes by which the day was desecrated, which they conscientiously believed to be holy? The Sunday law was not intended to compel people to go to church, or to perform any religious act, as an expression of preference for any particular creed or sect, but was designed to coerce a cessation from labor, that those who conscientiously believed that the day was set apart for the worship of God, might not be disturbed in the performance of their religious duties. Every man is free to use the day for the purpose for which it is set apart or not, as he pleases. If he sees proper to devote it to religious purposes, the law protects him from the disturbance of others; if he will not employ himself in religious duties, he is restrained from interrupting those who do. Thus the law, so far from affecting religious freedom, is a means by which the rights of conscience are enjoyed. It cannot be maintained that the law exacting a cessation from labor on Sunday compels an act of religious worship. Because divines may teach their churches that the reverential observance of the Lord's day is an act of religious worship, it by no means follows that the prohibition of worldly labor on that day was designed by the general assembly as an act of religion. . Such an idea can only be based on the supposition, of an entire ignorance in the legislature of the nature of the worship which God exacts from his creatures. A compliance with the law, induced by a fear of its penalties, could never be regarded as an act acceptable to the Deity. No act of worship, unless dictated by heartfelt love, can be pleasing to the Almighty. God listens alone to the voice of the heart.

Bearing in mind that our constitution was framed for a peo-

ple whose religion was christianity, who had long lived under, and experienced the necessity of laws to secure the observance of Sunday as a day of rest, how remarkable would it have been that they should have agreed to make common, by their fundamental law, a day consecrated from the very birth of their religion, and hallowed. by associations dear to every Christian. Convert Sunday into a worldly day by law, and what becomes of Christianity? How can we reconcile the idea to our understanding, that a people professing Christianity would make a fundamental law by which they would convert Sunday into a worldly day? It would have been an act of deadly hostility to the religion they professed, exposing it to the danger of being reduced to the condition in which it was before the Roman world was governed by Christian princes. Though it might not be persecuted by the arm of the civil power, it would be driven by the annoyances and interruptions of the world to corners and by-places, in which to find a retreat for its undisturbed exercise.

How startling would the announcement be to the people of Missouri that, by their organic law, they had abolished Sunday as a day of rest, and had put it.out of the power of their legislators ever to restore it as such! With what sorrow would the toil-worn laborer receive the intelligence that there was no longer by law a day of rest from his labor! The poor beasts of burden would soon find by experience, that our laws were no longer tempered by the softening influences of Christianity, and all the social advantages, which great and good men have attributed to the observance of Sunday as a day of rest, would be taken away.

In conclusion, we are of opinion that there is nothing inconsistent with the constitution, as it was understood at the time of its adoption, with a law compelling the observance of Sunday as a day of rest. The constitution itself recognizes that day as a day of rest, and from the circumstances under which it was done, we are warranted in the opinion, that a power to

compel a cessation from labor·on that day was not designed to be withheld from the general assembly.

2. A law compelling the observance of Sunday as a day of rest has always been in force under our state government. A license granted by the state must be construed in reference to this law. A dram-shop keeper who should open his shop and entertain his customers on Sunday, as on other days, would violate the Lord's day act. He is in no worse condition, so far as the authority to sell on Sunday is concerned, because the offence of keeping open a dram-shop on that day is specifically denounced by an act of the legislature. That act was passed, not because to keep open a drinking house on Sunday was no offence, but that such offence might be visited by a heavier penalty than was inflicted for a violation of the Lord's day act. The argument against this view of the subject is founded in a mistake as to the Sunday law of 1835. The penalty for a violation of that act was five, and not fifty dollars, as was stated.

3. The appellant complains that there was error in assessing a fine for keeping open his ale house, and also one for selling liquors; that the two acts constitute but one offence, and only one penalty was incurred. The words of the act are: "Every person who shall keep open any ale or porter house, grocery or tippling shop, or shall sell or retail any fermented or distilled liquor on the first day of the week, shall, on conviction, be fined not less than fifty dollars." From this provision, it is clear that the keeping open of an ale-house on Sunday is an offence. It is equally clear that the selling or retailing of any fermented or distilled liquor on that day is an offence. Each of these offences is set forth in a separate count in the indictment. Let the act construe itself. The 31st section prohibits labor on Sunday under a penalty of five dollars. The 33d section imposes a fine of fifty dollars for horse racing, cockfighting, playing at cards, &c., on Sunday. Then comes the section under consideration. Now, suppose a person on Sun-

State *v.* Ambs.

day morning plows his field, runs a horse race at noon, and at sun-set plays a game of cards, will not three penalties have been incurred, as much as if these acts had been done by different individuals? As the opening of an ale-house, and the selling of distilled liquors on Sunday are different offences, why may not several penalties be incurred for their commission? They are charged as separate misdemeanors in the indictment, and the appellant has confessed them as such.

The other judges concurring, the judgment will be affirmed.

A motion for a rehearing of the above cause was filed and overruled.