THE STATE *ex rel.* REID v. WALBRIDGE, *Mayor.*

### Division Two, January 8, 1894.

1. **St. Louis Charter**: REMOVAL OF OFFICERS : MAYOR. The St. Louis city charter, article 4, section 5, providing that any appointed officer may be removed by the mayor or council for cause, and revised ordinances, sections 917, 919 and 1105, empowering the mayor to remove such officer for cause, was not repealed by the act of the general assembly of 1877 (Laws, p. 346), providing for removal of any state, county or city officer, guilty of willful and corrupt neglect of official duty and for a trial by jury if demanded. (*Manker v. Faulhaber*, 94 Mo. 430, *followed.*)

2. **Constitution**: REMOVAL OF OFFICERS. The state constitution, section 7, article 14, which provides that "the general assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers on conviction of willful, corrupt or fraudulent violation or neglect of public duty," does not limit the power of the general assembly to pass laws for removal from such offices to the grounds specified in said section 7.

3. **City**: ORDINANCES: CRIMES. A city may pass ordinances punishing as crimes acts also made punishable by indictment under the laws of the state.

4. **St. Louis Charter**: REMOVAL OF OFFICERS: ORDINANCE. An ordinance prescribing removal by the mayor of an appointed officer as a penalty for misconduct in office is within the general welfare clause of the St. Louis city charter.

| | |
|---|---|
| 119 | 383 |
| 56a | 19 |
| 119 | 383 |
| 121 | 71 |
| 122 | 174 |
| 123 | 529 |
| 123 | 534 |
| 124 | 513 |
| 57a | 207 |
| 119 | 383 |
| 128 | 287 |
| 119 | 383 |
| 129 | 576 |
| 119 | 383 |
| 134 | 19 |
| 119 | 383 |
| 136 | 429 |
| 68a | 118 |
| 119 | 383 |
| 138 | 46 |
| 119 | 383 |
| 149 | 585 |
| 78a | 426 |
| 119 | 383 |
| 153 | 200 |
| 119 | 383 |
| 155 | 500 |
| 119 | 383 |
| 159 | 167 |
| 119 | 383 |
| 164 | 54 |
| 164 | 213 |
| 119 | 383 |
| 99a | ³281 |
| 119 | 383 |
| 177 | ¹543 |

5. ——: ——: MODE OF PROCEDURE. Where the charter and ordinances empower the mayor to remove an appointed officer for cause, no procedure being specified, there exists an implied requirement of proper notice to the officer of charges preferred and full opportunity for him to be heard and the mayor is clothed with the necessary power to carry out his authority.

*Prohibition.*

WRIT DENIED.

STATEMENT.

By this original proceeding in this court, a rule was issued and served on the mayor of St. Louis, requiring him to show cause why he should not be prohibited from proceeding to try the relator on certain charges which had been preferred against him by Robert E. McMath, president of the board of public improvements, which charges showed upon their face certain derelictions of official duty on the part of relator as commissioner of public buildings.

After setting forth the notice to the relator from the mayor, the charges preferred and the items and particulars offered in their support, the petition praying for the writ concludes: "The relator states that no provisions of law have been enacted or are in force governing proceedings at a trial of the character aforesaid before the mayor, or providing means by which the relator can compel the attendance of witnesses on his behalf at said hearing, or denouncing the pains and penalties of perjury against witnesses who at said proceedings shall testify falsely to any material fact in the matter, or providing for a trial by jury.

"That under the general statutes of this state by sections 7127, 7128, 7129 and 7130, the circuit court of the city of St. Louis has exclusive jurisdiction of the trial and determination of the matters which the said

mayor is proceeding, as aforesaid, to try and determine in the premises, and at said trial in the circuit court the accused is entitled to a trial by jury.

"That the proceedings of the mayor, as aforesaid, are an infringement on the rights of the relator, and are an attempt to exercise authority that the mayor does not possess, and are an encroachment upon the authority and jurisdiction of the courts of this state.

"Wherefore the relator prays that a writ of prohibition to the said Cyrus P. Walbridge, mayor, as aforesaid, be directed, prohibiting him from proceeding or holding the trial aforesaid," and is duly certified.

The respondent, for his return, demurred generally on the ground that the petition did not state facts sufficient, etc. And because the facts stated in the petition did not bring this cause within the classification of causes enumerated in section 7, of article 14 of the constitution, nor within section 7127, Revised Statutes, 1889, etc., etc. These sections were enacted in 1877. Laws of that year, p. 346.

Section 7 aforesaid of the constitution, declares: "The general assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers on conviction of willful, corrupt or fraudulent violation or neglect of official duty."

Section 7127 of the statute, in obedience to the constitutional mandate just quoted, and also of section 18 of article 2 of that instrument, provides that: "Any person elected or appointed to any office or employment of trust and profit, under the laws of this state, or any ordinance of any municipality in this state, except such officers as may be removed by impeachment, who shall fail to personally devote his time to the performance of the duties of such office or employment of trust or profit, and any county, city, town or township officer who shall

be guilty of any willful, corrupt or fraudulent violation or neglect of any official duty, shall forfeit his office, and be removed therefrom as hereinafter provided."

The other sections relied on by relator provide for the enforcement of the section just quoted, by a complaint filed by a prosecuting officer, etc., in the circuit court, and a trial after so many days with and by a jury if demanded, and for a judgment of removal if the defendant be found guilty of violating the provisions of section 7127, etc., etc.

Section 5 of article 4 of the city charter, provides that: "Any elected city officer may be suspended by the mayor and removed by the council for cause; and any appointed officer may be removed by the mayor or council for cause. In either case the mayor shall temporarily fill the vacancy, except as hereinafter provided."

The office of relator is appointive, and its term is four years (Rev. Ord. 687, sec. 681), not expiring until 1895. The revised ordinances in briefer terms than the charter, provide for the removal by the mayor of an appointed officer, "for cause" (secs. 917, 919 and 1105), but though provision is made for charges being preferred and a trial had where the mayor suspends an elected officer (secs. 918, 1094 *et seq.*), yet no such provision has been discovered in regard to appointive officers.

*Leverett Bell* and *William B. Thompson* for relator.

The proposition maintained by the relator in this case is that the circuit court of the city of St. Louis has exclusive jurisdiction of the trial and determination of matters which the mayor of said city is proceeding to try and determine herein, and that the mayor is without jurisdiction in the premises. State constitution, sections 20, 21, 22, 23, 24 and 25, of article 9, and section 7 of

article 14; charter of St. Louis, section 5 of article 4, 2 R. S., p. 2102; Laws of 1877, p. 346; sections 7127, 7128, 7129 and 7130, 2 R. S., p. 1664; *Ewing v. Hoblitzelle*, 85 Mo. 64; *State v. St. Louis*, 90 Mo. 19; *Manker v. Faulhaber*, 94 Mo. 430; *State v. Railroad*, 22 S. E. Rep. 910.

*W. C. Marshall* for respondent.

(1) The petition does not state facts sufficient to constitute a cause of action. Laws of 1870, p. 469; Const. 1875, sec. 7, art. 14; *Manker v. Faulhaber*, 94 Mo. 430. (2) The act of 1877 did not repeal by implication the power of the mayor to remove for cause. The charter being special and particular, will not be construed as repealed by implication by the act of 1877, unless there is an irreconcilable conflict between the two so that they can not both stand. *City v. Standard*, 24 Mo. App. 192; *Vaughn v. Scade*, 30 Mo. 600; *Ex parte Hollwedell*, 74 Mo. 395; *Tittman v. Edwards*, 27 Mo. App. 492; *Young v. Railroad*, 33 Mo. App. 509; *State ex rel. v. Frazier*, 98 Mo. 426; *State ex rel. v. Cemetery Ass'n*, 11 Mo. App. 570; *St. Louis v. Alexander*, 23 Mo. App. 483–508; *State ex rel. v. McDonald*, 38 Mo. 529; *Peters v. Renick*, 37 Mo. 597; *State ex rel. v. Macon*, 41 Mo. 453; Sedgwick on Stat. & Const. Law [2 Ed.], 98, and note. (3) The remedy afforded by the city charter and that provided by the act of 1877 can stand together. The purpose to be accomplished is the same in both. The means to be employed for the accomplishment of the purpose in view are different, but a later statute which provides another method of attaining the desired result, does not repeal by implication a former statute simply because the means employed are different. *City v. Standard*, 24 Mo. App. 192; *Vaughn v. Scade*, 30 Mo. 600; *Ex parte Hollwedell*, 74 Mo. 395; *Tittman v. Edwards*, 27 Mo.

App. 492.   (4) The legislature had no power to repeal or take away the power conferred upon the mayor to remove appointed officers for cause.   (5) The mayor has power to administer oaths and to summon witnesses, and hence there is no merit in the claim that there is no machinery afforded by law for securing a trial or for punishing witnesses who swear falsely. Section 7120, Revised Statutes, 1889, gives the mayor power to administer oaths.   Section 31 of article 4 of the city charter requires the city marshal to execute and return all processes and orders of the mayor.   This affords the machinery necessary.

SHERWOOD, J.—The foregoing premises are laid down as the basis for the following remarks:

In *Manker v. Faulhaber*, 94 Mo. 430, action was brought against the mayor and others for damage for maliciously removing the plaintiff from the office of city collector, in November, 1878.   The defendants justified under the amended charter of that city, approved March, 1875, which contained this provision:   "The mayor * * * shall have power, with the consent of the board of aldermen, to remove from office any person holding office created by charter or ordinance, for cause, and on application of three-fourths of the board of aldermen he shall be compelled to remove any officer created by ordinance."   The trial court refused to permit that section of the charter to be read in evidence, and instructed the jury that, under the constitution and laws of Missouri, as they existed in November, 1878, the mayor and board of aldermen of the city of Sedalia had no legal right or authority to remove the plaintiff from the office of city collector. This action of the trial court was held erroneous; that the charter of Sedalia was unaffected by the act of 1877; that the charter not conferring on the mayor

and aldermen the power to remove a municipal officer, was special and particular, while the act of 1877 was general and affirmative, without repealing words; that the two acts were not irreconcilably inconsistent, and, therefore, there was no repeal by implication.

That ruling can not be otherwise regarded than as decisive of this case; since the charter of St. Louis of 1876 is no more inconsistent with the general law of 1877 than was the charter of Sedalia on the point already quoted. *Manker v. Faulhaber*, has been approvingly cited as to repeals by implication in *State v. Noland*, 111 Mo. *loc. cit.* 484, and directly followed in *State ex rel. v. Slover*, 113 Mo. 202, where it was distinctly ruled that section 8233, Revised Statutes, 1889, providing that an official stenographer might ·be removed without the intervention of a jury, for "incompetency or any misconduct in office," by the *judge* of the circuit court, on charges entered of record, and notice given, could stand as consistent with section 7127, aforesaid, and that the provisions of section 8233 might well be regarded as simply furnishing a *cumulative* remedy to that ordained in the former section, in relation to removals for failure to give personal attention to official duties.

"A repeal by implication must be by necessary implication. It is not sufficient to establish that the subsequent law or laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative, or cumulative, or. auxiliary. But there must be a positive repugnancy between the provisions of the new law and those of the old; and, even then, the old law is repealed by implication only *pro tanto* to the extent of the repugnancy." Anderson's Law Dict., 879.

Other considerations tend toward the same result as that announced in the cases cited. It will be ob-

served that section 7, of article 14 aforesaid, says: "The general assembly shall, in addition to *other penalties*, provide for the removal," etc.   The term penalty has been defined as the punishment which the law inflicts for its violation.   It is commonly but not exclusively a pecuniary punishment; it embraces as well the idea of forfeiture as of a fine.   18 Am. and Eng. Encyclopedia of Law, 269, and cases cited.

The terms penalty and punishment are frequently used as the synonyms of each other.   Thus Webster defines punishment as pain, suffering or loss inflicted on a person because of a crime or offense, a penalty inflicted by a court of justice, and the latter term he defines as punishment for a crime or offense.   For the last word he gives as synonyms, misdemeanor, transgression, delinquency; and for misdemeanor he gives misconduct, misbehavior.   He also gives penalty, fine, mulct, as the equivalents of forfeiture, that is, the loss of some right, estate, office or effects by an offense, etc. "Punishments not corporal are fines, forfeitures, suspension or deprivation of some political or civil right; deprivation of office, and being rendered incapable to hold office."   2 Bouvier L. Dict.   The deprivation of any civil right for past conduct is punishment for such conduct.   *Cummings v. Missouri*, 4 Wall. 277.

Taking, then, the word penalty in the broad sense, already set forth in the foregoing definitions, as tantamount to punishment, fine, forfeiture, deprivation of some office or right, for some offense, misdemeanor, misconduct or delinquency, it is not difficult to see that the framers of the constitution did not intend to limit the power of the general assembly to pass laws for removal from office, county, city or township officers to the grounds specified in section 7.   The exercise of that power was commanded *"in addition to other penalties,"* penalties theretofore existing or which might

subsequently be enacted.

Long before the constitution of 1875 was adopted, penalties had been imposed by the general assembly for official misconduct. As far back as 1825, we had a statute, still on the statute books, providing for punishing any officer who should be convicted of "any willful misconduct or misdemeanor in office, or neglect to perform any duty enjoined on him by law." *State v. Gardner*, 2 Mo. 23; Stat. 1835, p. 200, sec. 20; R. S. 1845, p. 391, sec. 21; R. S. 1855, p. 614, sec. 21; Gen. Stat. 1865, p. 808, sec. 21; 1 R. S. 1879, sec. 1488; R. S. 1889, sec. 3737. Other statutes are still extant which long antedate our present constitution, making provision for the punishment by indictment and for removal from office of officers found guilty of willful and malicious oppression, partiality or abuse of authority or extortion or fraud committed in an official capacity. R. S. 1835, pp. 200, 201; R. S. 1845, pp. 390, 391; R. S. 1855, pp. 613, 614, 615; Gen. Stat. 1865, p. 808; R. S. 1879, secs. 1483, 1484, 1485, 1486, 1488; R. S. 1889, secs. 3732, 3733, 3734, 3735.

The legislature evidently took the same view as that already announced as to the meaning of "other penalties," when they enacted section 1642, Revised Statutes, 1879, which first provided for the punishment by fine or imprisonment or both, of any state, county, city, town or township officer for drunkenness in office, and for the removal of such officer, unless one liable to impeachment. R. S. 1889, sec. 3928.

The conclusion from the premises seems inevitable that the whole machinery of the law as then provided, or thereafter might be provided, for the punishment or removal from office of unworthy officials, was regarded by the framers of the constitution as furnishing *additional penalties* to those they commanded the general assembly, by section 7, to fur-

nish for the removal of the class of officers enumerated in that section. If the words in question do not bear the meaning here imputed to them, then they must be regarded as without meaning, force or effect, which under a familiar rule, is an impossible supposition. If these views be correct, then the term "other penalties" as used in section 7 aforesaid, may well be applied also to provisions in the city charter and in ordinances passed in pursuance thereof, punishing neglect, misconduct or misdemeanors in the performance or nonperformance of official duty by removal from office. There is nothing, certainly, in the section in hand which restricts "other penalties" to those created by the *general assembly*, and no reason is perceived why they should thus be restricted. This court is thoroughly committed to the doctrine that a city may pass ordinances punishing as crimes acts also made punishable by indictment under the laws of this state. In *Ex parte Hollwedell*, 74 Mo. 401, it was said: "The right of a municipal corporation in this state to maintain in its own name a proceeding to recover a fine for nonobservance of an ordinance, has never been questioned, even though there be a general law of the state also imposing a fine for a like offense." Citing *St. Louis v. Cafferatta*, 24 Mo. 94; *Independence v. Moore*, 32 Mo. 392; *St. Louis v. Bentz*, 11 Mo. 61; *State v. Wister*, 62 Mo. 592; *State v. Harper*, 58 Mo. 530.

In the more recent case of *St. Louis v. Schoenbusch*, 95 Mo. 618, under the general welfare clause of the charter, page 326, section 26, paragraph 14, providing that the city should have power "to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the state, as may be expedient, in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures, and to enforce the same by fines and penal-

ties," it was ruled, after citing some of the above authorities, that an ordinance providing for the punishment of any person who should cruelly beat any dumb animal, etc., should be deemed guilty of a misdemeanor, and upon conviction should be fined, etc., was valid, notwithstanding there was no special grant of power to be found in the charter for passing such an ordinance; and notwithstanding the offense was punishable either under the general laws of this state or under the ordinance, this court holding that the general welfare clause heretofore quoted, furnished a sufficient basis to uphold the ordinance in question; that it was not inconsistent with the laws and constitution of this state, under the authorities cited, and that its enforcement was fairly within the power to maintain the peace, good government and welfare of the city. By parity of reasoning the same principle may well be applied in the case at bar. Surely nothing could more conduce to the good government and welfare of the city, than that it should annex "other penalties" (than those enacted by the general laws of the state) for the punishment of its own officers, than that incompetent or unworthy officers should be removed in a more summary way than that afforded by the method of procedure provided in section 7127 and its associate sections.

The legislators of a city when assembled for the performance of their legitimate functions and when acting within the confines of their delegated authority, constitute as Judge SCOTT happily expressed it in *Taylor v. Carondelet*, 22 Mo. 105, "a miniature general assembly" and the law-making power "gave their ordinances * * * the force of laws passed by the legislature of the state."

Lord ABINGER said: "The by-law has the same effect within its limits, and with respect to the persons

upon whom it lawfully operates, as an act of parliament has upon the subjects at large." *Hopkins v. Mayor*, 4 M. & W. 621. It is hardly necessary to say that this is the general view. 1 Dillon's Mun. Corp. [4 Ed.], sec. 308, and cases cited; *Fath v. Railroad*, 105 Mo. *loc. cit.* 548, and cases cited.

Besides, as stated by the eminent author just cited: "The power to amove a corporate officer from his office, for reasonable and just cause, is one of the common-law incidents of all corporations. This doctrine, though declared before, has been considered as settled ever since Lord MANSFIELD's judgment in the well known case of *The King v. Richardson*. It is there denied that there can be no power of amotion, unless given by charter or prescription; and the contrary doctrine is asserted—that from the reason of the thing, from the nature of corporations, and for the sake of order and government, the power is incidental." *Ibid.*, sec. 240.

In this instance, not only was the power of amotion of an offending officer for reasonable and just cause one of the common law incidents and resultants of the incorporation of the city, but it was specifically conferred by the charter, and delegated to the mayor and enforced by ordinance. It is true that neither charter nor ordinance make any provision for the *means* whereby the amotion of an appointed officer is to be effected; but where a grant of power is given, all the means necessary to effectuate the power pass as incidents of the grant. Sutherland on Stat. Construc., sec. 341; 2 Beach on Pub. Corp., sec. 1314; *Ex parte Marmaduke*, 91 Mo. *loc. cit.* 262, and cases cited; *Grover v. Huckins*, 26 Mich. 476.

In the case presented, the power to amove the officer is "for cause," and no notice is mentioned as requisite to be given to the officer to be proceeded against. But the law in accordance with the principles

of justice,—principles which are fundamental and eternal, will require that notice be given before any person be passed upon, either in- person, estate or any other matter or thing to which he is entitled.  And though the statutes do not in terms require notice, the law will imply that notice was intended.  *Laughlin v. Fairbanks*, 8 Mo. 370; *Wickham v. Page*, 49 Mo. 526; *Brown v. Weatherby*, 71 Mo. 152.  And what the law will imply, is as much part and parcel of a legislative enactment, as though set forth in terms.  *State ex rel. v. Board*, 108 Mo. 235; Sutherland on Stat. Construc., sec. 334, and cases cited.

Notice in this case, however, had been given and charges preferred, and this court following the authorities elsewhere, has decided that even where the removal is "for cause" that still notice must be given.  *State ex rel. Dennison v. City*, 90 Mo. 19; see, also, Mechem's Pub. Offices and Officers, sec. 454.  But of course, in circumstances like the present, if an officer be removed, it belongs to the courts to determine the sufficiency of the cause alleged.  Mechem's Pub. Offices and Officers, sec. 450, and cases cited.

It is alleged in the petition and also in the brief of relator that in a trial before the mayor, there are no provisions of law for summoning witnesses in his behalf, or to compel their attendance, or to swear them or denouncing the pains and penalties of perjury in giving their testimony.  But the mayor is authorized and required by law to administer any and all oaths in connection with the business of his office, etc.  R. S., 1889, sec. 7120.  This being the case, if any witness should swear falsely before the mayor on a trial of charges against an officer, perjury could be assigned thereon.  2 Bishop's New Cr. Law, secs. 1015, 1017.

And section 31 of article 4 of the charter requires of the city marshal that he execute and return all pro-

cesses or orders of the mayor. But even if there were no such provisions, no machinery provided by the charter or ordinance for a trial before the mayor, yet the power being granted by the charter and enforced by the ordinance, the means to effectuate the power granted, would pass as a necessary incident. The books are full of illustrations of this axiomatic legal truth, as shown by the authorities heretofore cited. The constitution of Michigan conferred power on the governor to remove certain state officers, for certain specified causes, but provided no means or measures whereby the removal was to be accomplished, nor was there any valid statute prescribing any method of examination or of procedure; and yet, notwithstanding this, it was held that the constitution having conferred such power it was held to be *judicial;* that it needed no statute to make it operative; that the grant of power carried with it all necessary incidental powers, without which the grant would be ineffectual, and that the officer proceeded against, in order for the proceedings to be valid, must have notice, charges preferred against him; a full opportunity to examine and cross-examine witnesses and to be heard on the facts and on the law. *Dullam v. Willson,* 53 Mich. 393.

Guided by the foregoing authorities, we hold that the charter of the city of St. Louis in the particular under discussion, is in harmony with the constitution and laws of this state; that the mayor being endued with power to remove the relator "for cause," could do so on notice given, charges preferred and full opportunity to be heard, and that the mayor has all the power necessary to carry into effect the authority granted him by the charter, and that the charges contained in the record are sufficient if relator be found guilty thereof, to authorize his removal.

Holding these views, we deny the writ of prohibition. All concur.