JULIUS KOMEN, Appellant, v. CITY OF ST. LOUIS ET AL.

Division Two, December 20, 1926.

**1. POLICE REGULATIONS: Vocations: Power of City.** The city of St. Louis is given power by its charter to enact ordinances regulating vocations, such as the sale of bread and other articles affecting the public health. But independent of express charter authority, the power of a city to enact reasonable ordinances regulating vocations is implied in the grant of its corporate existence by the State.

**2. SALE OF BREAD ON SUNDAY: Reasonable Ordinance: Within Statute.** An ordinance extending a favor to a class which is not enjoyed by others under a state law is not unreasonable. An ordinance prohibiting bakers and bakershop keepers to sell bread, pies or cakes or to keep open their shops after the hour of nine o'clock, A. M. on Sunday is not an unreasonable police regulation. It is more liberal than the statute (Sec. 3599, R. S. 1919) which includes within its provisions all persons and places of trade and barter and extends its inhibitions over the entire twenty-four hours, and classifies its violation as a misdemeanor, punishable only by fine, and is neither unreasonable, unjust, nor oppressive.

**3. ———: Uniformity.** An ordinance prohibiting bakers and bakershop keepers from selling bread after nine o'clock on Sunday includes all persons of a natural class, and is uniform in its operation upon all members of the class to which it applies.

**4. ———: ———: Articles of Necessity.** The statute (Sec. 3600, R. S. 1919) exempting "provisions or other articles of necessity" from the operation of the preceding section, which prohibits the sale of goods, wares and merchandise on Sunday, does not purport to authorize the sale of provisions or articles of necessity on Sunday; it simply announces that the Legislature has not prohibited the sale of such things on Sunday; therefore, an ordinance which prohibits bakers from selling bread after nine o'clock on Sunday is not a discrimination violative of said statutes, nor do they lessen its uniform application to all persons of such natural class.

**5. ———: Conflict with Statutes: Work: Religious Exemption.** The keeping open of a store or the selling of goods is a thing apart from the performance of labor, and therefore an ordinance which prohibits bakers or bakershop keepers to sell bread or cakes or pies or to keep open their shops on Sunday is not in conflict with the statute (Sec. 3597, R. S. 1919) declaring that the prohibition against work and labor on Sunday shall not extend to any person who is a member of a religious society by whom any other than the first day of the week is observed as a Sabbath.

**6. ———: Religious Liberty.** An ordinance prohibiting bakers and bakershop keepers to sell bread, cakes and pies on Sunday after nine o'clock in the morning does not violate the religious liberty guaranteed by Section 5 of Article 2 of the Constitution. Sunday-closing laws, in whatever phase presented and regardless of the persons to whom they were applicable, have uniformly been held to be constitutional by this court from the earliest date.

**7. ———: ———: Due Process: Police Regulation.** Sunday-closing laws are police regulations, and such regulations, being within the legislative power of the State and its subdivisions, do not violate the due-process clause of the Constitution.

**8. SALE OF BREAD ON SUNDAY: Religious Persecution and Molestation: Day of Rest.** An ordinance prohibiting bakers or bakeries to sell bread or to keep open their shops on Sunday is primarily an industrial regulation, and the authority for its enactment is found in the police power of the State,

delegated to the city. Its purpose is so to regulate the business of the community as to promote the moral and physical welfare, and the selection of Sunday, though a day of peculiar sanctity, as the day for the cessation of business, does not render it invalid. The ordinance imposes no religious ceremony on the baker; it does not require him to attend upon or observe any form of worship; it leaves him free to devote any other day to rest or religious observances; if he deems another day more suitable for cessation from business and for worship he is free to devote such day to those purposes, and it therefore does not interfere with his religious freedom or conscientious scruples; it simply requires him to observe a regulation directing and controlling the business of the community.

9. ————: **U. S. Fifth Amendment.** The Fifth Amendment of the Constitution of the United States relates only to acts of Congress, and not to the States, and therefore the validity of a city ordinance is not affected by it.

10. ————: **Fourteenth Amendment: Equal Protection.** An ordinance prohibiting a baker to sell bread on Sunday, although he observes Saturday as the Sabbath and is required by his religion to do so, does not deprive him of the equal protection of the laws guaranteed by the Fourteenth Amendment. The ordinance is within the purview of the police power of the city, and a police regulation is not invalid for that it does not affect all persons alike. Cessation from business on Sunday may be deemed a religious duty by some citizens, and not a religious duty by others, but a police regulation may make it the civil duty of all.

11. ————: **Religious Preference.** An ordinance which is general in its terms and equitably uniform in its application to all persons of a natural class, such as an ordinance forbidding all bakers and bakershop keepers to sell bread, cakes and pies or to keep open their shops on Sunday, is not invalid as a preference of one religion, creed or church, or as a discrimination against another creed or religion.

12. ————: **Special Legislation.** An ordinance prohibiting all bakers of the city to keep open their shops or to sell bakery articles after nine o'clock, A. M. on Sunday is not void as special legislation.

Corpus Juris-Cyc. References: **Constitutional Law,** 12 C. J., Section 163, p. 744, n. 94; Section 222, p. 798, n. 46; Section 418, p. 911, n. 45; Section 457, p. 945, n. 11; Section 1074, p. 1272, n. 23; Section 1077, p. 1275, n. 73, 74. **Municipal Corporations,** 43 C. J., Section 200, p. 203, n. 12; Section 204, p. 205, n. 50; Section 218, p. 214, n. 5; p. 215, n. 6; Section 220, p. 219, n. 37, 40; p. 220, n. 41; Section 231, p. 234, n. 86; Section 235, p. 236, n. 23; Section 239, p. 241, n. 88; p. 242, n. 93; Section 325, p. 312, n. 5, 6; Section 407, p. 357, n. 40; p. 358, n. 47; Section 409, p. 360, n. 70; Section 581, p. 436, n. 97, 2; Section 802, p. 521, n. 23 New. **Sunday,** 37 Cyc., p. 541, n. 22; p. 542, n. 28, 30.

Appeal from Circuit Court of City of St. Louis.—*Hon. H. A. Hamilton,* Judge.

AFFIRMED.

*Banister, Leonard, Sibley & McRoberts* and *Greensfelder, Dyott & Grand* for appellant.

(1) The ordinance in question cannot be justified under the police power of the city. 12 C. J. 929-931. (2) This ordinance is in conflict with Sec. 7641, R. S. 1919, and Article IV, Section 13, of Charter of City of St. Louis, which provide that an ordinance shall not contain more than one subject, which shall be clearly expressed in its title.

State v. Persinger, 76 Mo. 346; State v. Great Western C. & T. Co., 171 Mo. 634; State ex inf. v. Borden, 164 Mo. 221; State v. Sloan, 258 Mo. 305; State v. Hurley, 258 Mo. 275; Woodward Hardware Co. v. Fisher, 269 Mo. 271; Booth v. Scott, 205 S. W. 633; State v. Crites, 209 S. W. 863. (3) The ordinance is void because it is discriminatory and is class legislation. State ex rel. v. Kimmel, 256 Mo. 637; State v. Baskovitz, 250 Mo. 82; State v. Bottling Co., 261 Mo. 300; State v. Lieberman, 26 Neb. 464; Ragio v. State, 86 Tenn. 272; State v. Miksick, 225 Mo. 561; Ex parte Lerner, 218 S. W. 331. (4) The ordinance is void in that it is opposed to the public policy of this State as indicated by Secs. 3596 and 3597, of R. S. 1919. Kansas City v. Hallett, 59 Mo. App. 160; State v. Meyer, 185 Mo. 583; St. Louis v. Scheer, 235 Mo. 721; State v. Tilkemeyer, 226 Mo. 130; St. Louis v. World Pub. Co., 227 Mo. 148. (5) The ordinance is void because it is special legislation. State v. Grannoman, 132 Mo. 326.

*Julius T. Muench* and *Oliver Senti* for respondents; *Henry Kortjohn* of counsel.

(1) Power to enact the ordinance is lawfully conferred upon the city by its charter. Sec. 1, Art. 4; Pars. 23, 25, 26, 33 and 35, Section 1, Article I, Charter of City of St. Louis; Moving Co. v. O'Brien, 240 S. W. 483; Wagner v. St. Louis, 284 Mo. 411. (2) Courts will not hold a statute or ordinance unconstitutional unless it contravenes the organic law in such a manner as to leave no doubt as to its unconstitutionality. (a) The courts will not declare an ordinance unreasonable unless it is so clearly unreasonable that there can be no difference upon the question in the minds of reasonable men. (b) One who attacks the validity of an ordinance has the burden of satisfying the court that any conclusion except its invalidity cannot be reached by reasonable men. Bledsoe v. Stallard, 250 Mo. 154; State v. Layton, 160 Mo. 474; State ex rel. v. Fort, 210 Mo. 512; St. Louis v. Weber, 44 Mo. 547; Wagner v. St. Louis, 284 Mo. 411. (3) Ordinance 31353 is not in conflict with the State Sunday-Closing Law. St. Louis v. Bernard, 249 Mo. 51. (4) An ordinance of the city of St. Louis requiring bakery shops to close after nine, A. M. on Sunday does not violate the Missouri Constitution. State v. Ambs, 20 Mo. 214; State v. Railroad Co., 239 Mo. 196; St. Louis v. DeLassus, 205 Mo. 578; 37 Cyc. 541. (5) The Fifth Amendment to the Federal Constitution operates only as a limitation of the powers of Congress and is not violated by a Sunday-closing regulation enacted by the State or its municipality. Capital Dairy Co. v. Ohio, 183 U. S. 238, 46 L. Ed. 245. (6) A Sunday-closing regulation is an exercise of the police power of the State and does not violate the Fourteenth Amendment to the Federal Constitution. Brunswick-Balke-Collander Co. v. Evans, 228 Fed. 996; Hennington v. Georgia, 41 L.

Ed. 166; Pettit v. Minnesota, 44 L. Ed. 716. (7) An ordinance requiring the closing of bakery shops after nine A. M. on Sunday does not discriminate against Orthodox Jews. Commonwealth v. Wolf, 3 Serg. & R. 48; Parker v. State, 84 Tenn. 476; Commonwealth v. Has, 122 Mass. 40; Commonwealth v. Starr, 144 Mass. 359; Frolickstein v. Mayor of Mobile, 4 Ala. 725; Ex parte Andrews, 18 Cal. 678; Council v. Benjamin, 49 Am. Dec. 608. (8) A statute of the State prescribing the requirements of a title to an ordinance of a city of the first class has no application to the city of St. Louis. State ex rel. Hawes v. Mason, 153 Mo. 29. The title to an ordinance is sufficient if it is not deceptive as to the chief topic and if the minor features have a natural connection with the subject named in the title. Sound policy and legislative convenience dictate a liberal construction of titles to the subject-matter of enactments to maintain their validity; where the objects dealt with are germane to the subject mentioned the title is sufficient. St. Louis v. Leissing, 190 Mo. 464; St. Louis v. Weitzel, 130 Mo. 600; St. Louis v. Whitaker, 160 Mo. 59.

WALKER, P. J.—The plaintiff brought suit in the Circuit Court of the City of St. Louis to enjoin the police from arresting him for keeping open his bakery on Sunday and exposing to sale his products after nine o'clock, A. M. of that day in violation of a city ordinance, No. 31353, prohibiting the sale of bread, cakes and other bakery products after nine o'clock, A. M. on the first day of the week, called Sunday. Upon the filing of the petition a temporary restraining order was issued enjoining the plaintiff's arrest for the violation of the ordinance. On a final hearing a permanent writ was denied. From this judgment the plaintiff appealed to this court and, pending the determination of the appeal, the trial court ordered the temporary injunction to remain in force.

The plaintiff alleges that he and his patrons are Orthodox Jews; that his products are prepared in accordance with the requirements of that faith; and that he and they observe Saturday or the Jewish Sabbath as a day of worship and rest, and that Ordinance No. 31353 discriminates against them and violates their religious freedom.

The ordinance complained of is as follows:

"Be it ordained by the City of St. Louis, as follows:

"Section One.—No baker, or bakeshop keeper shall keep open or exhibit for sale or sell any of the articles hereinafter described on the first day of the week, commonly called Sunday, after the hour of nine o'clock, A. M.

"Section Two.—*Penalty for keeping open stores.* Any keeper of a bakery store, or bakeshop, who shall keep open said store or shop for the purpose of sale or expose for sale or sell any of the articles hereinafter enumerated on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor and, on conviction

thereof, shall be fined not less than twenty or more than fifty dollars for each and every offense.

"Section Three.—*Bakery storekeeper defined. Sale of article prohibited. When.* A bakery storekeeper or shopkeeper, within the meaning of this ordinance, shall be defined to be any person or persons, copartnership or corporation, dealing in bread, coffee cake, sweet cakes, doughnuts, pies, biscuits, crullers, rolls and buns or any of them.

"Section Four.—*Owner or Agent's liability.* A keeper of a bakery shop, confectionary or store within the meaning of this ordinance shall be construed to include the agents and servants of such keeper as far as the penalties of this ordinance and liabilities thereunder are concerned.

"Approved July 11, 1921."

The validity of this ordinance is assailed for the reasons set forth in plaintiff's petition, which we will consider later.

At the hearing on the merits in the circuit court testimony as to the religion of the plaintiff and his patrons, the requirement of their religion as to the preparation of food, the volume of plaintiff's business and the effect thereon of enforcing the ordinance, the sale after nine o'clock, A. M. on Sunday of similar products as a component part of meals by hotels and restaurants, plaintiff's observance of Saturday as a day of rest and his inability to prepare his products in time to supply his patrons therewith before nine o'clock, A. M. on Sunday, and threats of the police to arrest him if he sold or delivered his products in violation of the terms of the ordinance, were submitted by the plaintiff.

It was shown by the defendants that plaintiff, unless prevented by the police, would keep his shop open and sell bakery products therein on Sundays after nine o'clock, A. M; that by increasing the number of his employees and enlarging his equipment plaintiff could complete the production and sale of his products by nine o'clock, A. M. on Sunday, and that the only instruction given to the police in regard to the enforcement of the ordinance was a copy delivered to the captain of each district with a typewritten notation on the bottom that violations thereof were not to be permitted.

I. Fourteen reasons are stated by the plaintiff in support of his contention that the ordinance in controversy is invalid. We shall consider them in their order.

The first assails the authority of the law-making body of the city of St. Louis to enact the ordinance and as a consequence to prescribe the regulations therein contained. Section One of Article IV of the

Charter of the City of St. Louis vests the legislative power of the
city in a Board of Aldermen. The following para-
**Police Power**   graphs, numerically designated, of Section One of
**of City.**        Article One of the Charter confer upon the board,
in the enactment of ordinances, the following powers:

"(23)  To license and regulate all persons, firms, corporations,
companies and associations engaged in any business, occupation, call-
ing, profession or trade.

"(25)  To define and prohibit, abate, suppress and prevent or
license and regulate all acts, practices, conduct, business, occupations,
callings, trades, uses of property and all other things whatsoever
detrimental or liable to be detrimental to the health, morals, com-
fort, safety, convenience or welfare of the inhabitants of the city and
all nuisances and causes thereof.

"(26)  To prescribe limits within which business, occupations
and practices liable to be nuisances or detrimental to the health,
morals, security or general welfare of the people may lawfully be
established, conducted or maintained.

"(33)  To do all things whatsoever expedient for promoting or
maintaining the comfort, education, morals, peace, government,
health, welfare, trade, commerce or manufactures of the city or its
inhabitants.

"(35)  To exercise all powers granted or not prohibited to it by
law or which it would be competent for this charter to enumerate."

These charter provisions are nothing more than a declaration of
the city's police power, which supplemented by Paragraph 14, Sec-
tion 26, Article 3 of the Charter, known as the general welfare clause,
give the board of aldermen ample authority to enact Ordinance No.
31353, which is in the nature of a police regulation to insure the safe-
ty, health, comfort and welfare of its citizens; but independent of
these express charter provisions the implication of the city's power
arising out of the grant of its corporate existence by the State, is suf-
ficiently evident to authorize the enactment and enforcement of the
ordinance. To hold otherwise would be to deprive the city as an en-
tity and a recognized subdivision of the State of one of the powers
necessary to enable it to perform its governmental functions. Put
more strongly, the exercise of the police power by a city in the
regulation of vocations is one of the municipal functions necessarily
and inseparably incident to its existence as a corporation. [1 Bl.
Com. 475.]

While the power of a municipality to exercise the police power
has frequently been challenged on the ground that it is a sovereign
power, non-delegable, the doctrine is now well established that the
Legislature may, in express terms, or by implication, delegate to
municipal corporations the exercise of police power within their cor-

porate limits. [Sanders v. So. Elec. Co., 147 Mo. 411, 48 S. W. 855; State v. Cowan, 29 Mo. 330; Metcalf v. St. Louis, 11 Mo. 102.]

Although the trust reposed by the State is official and personal and may be discharged only by those to whom the State commits it (Trenton v. Clayton, 50 Mo. App. 535; Day v. Green, 4 Cush. (Mass.) 433; Chicago v. Stratton, 162 Ill. 494), this doctrine is not to be so construed and applied as to require the entire board of aldermen to engage personally in every step necessary to the exercise of the function. The board's official duty may be fully discharged and its municipal discretion exhausted by the enactment of ordinances to be executed by the proper officers of the city. [St. Louis v. Weitzel, 130 Mo. 600, 31 S. W. 1045; Bliss v. Kraus, 16 Ohio St. 54; Batsel v. Blaine, 15 S. W. (Tex. App.) 283; Patterson v. Taylor, 51 Fla. 275; Gundling v. Chicago, 176 Ill. 340, 48 L. R. A. 230; People v. Rochester, 45 Hun (N. Y.) 102.]

Further than this, the Legislature may confer police power upon a municipality over subjects within the provisions of existing state laws. [State v. Walbridge, 119 Mo. 383, 24 S. W. 457; St. Louis v. Schoenbusch, 95 Mo. 618, 8 S. W. 791; State v. Wister, 62 Mo. 592; and cases cited in 28 Cyc. under paragraph 4, p. 696, note 96.] Of this, more later.

Plaintiff's second contention is that the ordinance is unjust, unreasonable and oppressive. These adjectives strike the ear with a harsh resonance. To justify their use in stigmatizing **Reasonable and Just.** a statute, state or municipal, the most serious and convincing reasons should be adduced. To render a law unjust it must be contrary to right or justice; to render it unreasonable it must be immoderate in its terms; and to render it oppressive it must, in its operation, be harsh, rigorous or severe. The ordinance applies with uniform exactness to all persons of a class, viz.: bakers and bakeshop keepers. Its purpose, evident from its provisions, is to prohibit all within the class from plying their vocation after nine o'clock, A. M. on Sundays. In this respect it is more liberal than the state statute, Section 3599, Revised Statutes 1919, which includes within its provisions, with the exceptions noted in Section 3600, all persons and places of barter and trade in the city and extends its limitations over the entire twenty-four hours of every Sunday.

If the ordinance, as the reference to the statute discloses, is more liberal in its inhibition than the latter as to the time when the class in question may transact business on Sunday, it must be held that it favors rather than deals unjustly with that class. Moderate in its terms and extending a favor to the class to which it applies, not enjoyed by others under the statute it cannot be said to be unreasonable. [St. Louis v. DeLassus, 205 Mo. 1. c. 587.] It deprives the plaintiff of no right he is entitled to under the law. Thus limited in

its application it defines a duty enjoined by law and its violation is mildly classified as a misdemeanor, punishable only by a fine. Under these circumstances it cannot be held to be oppressive.

As to the third contention that the ordinance is not uniform in its operation upon the classes to which it applies, but **Uniformity.** that it discriminates against the plaintiff, it is enough to say that by its terms it bears testimony to the absence of merit in this contention. It is directed against bakers and bakeshop keepers. These constitute, under a natural subdivision of mercantile vocations, a separate class, and hence subject to restrictive legislation as such. If it is intended to base the alleged discrimination in this contention on the ground that Section 3600, supra, exempts "provisions or other articles of necessity" from the state law (Sec. 3599) prohibiting sales on Sunday, it will be sufficient to say, as was said in St. Louis v. Bernard, 249 Mo. 1. c. 56, that "Section 4805, Revised Statutes 1909 (now Sec. 3600, R. S. 1919), does not purport to authorize the sale of provisions, etc., on Sunday. It is simply a legislative announcement that the General Assembly has not, by Section 4804, Revised Statutes 1909 (now Sec. 3599, R. S. 1919), prohibited the sale of such articles on Sunday."

"Finding the law in this condition the city took up the proposition of the sale of provisions, such as the defendant is charged with selling, where the General Assembly left off, and by the ordinance now in judgment prohibited the keeping open of grocery stores for the sale of provisions therein after the hour of nine o'clock in the forenoon on Sundays."

The apposite character of the rule of construction, as applied in the Bernard case, to that at bar, becomes evident upon a statement of the facts in the former. Bernard was charged with a violation of Ordinance Number 25024 of the city of St. Louis, prohibiting any grocer or grocery-store keeper from keeping open his store or exposing for sale or selling any article after nine o'clock, A. M. on Sunday. While the character of the business is different in the ordinance there construed from that in the instant case, the offense of keeping open, selling or offering for sale on Sunday after nine o'clock, A. M., and the classification of the offense in each ordinance as a misdemeanor and the limiting of the punishment to a fine is the same, no question of discrimination against a class was expressed or intimated in the Bernard case, and the classification there made having been upheld it follows that the rule there announced may, with a proper regard for the canons of construction, be applied to the instant case.

Plaintiff's fourth contention is that the ordinance is in conflict with Sections 3596, 3597, 3599 and 3600, Revised Statutes 1919.

Section 3596, Revised Statutes 1919, provides that every person who shall labor or compel or permit any person under his control to perform work other than household offices of daily **Conflict with** necessity or other works of necessity or charity on Sun- **Statutes.** day, shall be deemed guilty of a misdemeanor. Section 3597, provides that the last preceding section (3596) shall not extend to any person who is a member of a religious society by whom any other than the first day of the week is observed as the Sabbath.

Under our statutes the keeping open of a store or the selling of goods on Sunday is a thing separate and apart from the performance of Sunday labor. This is evidenced by the fact that they are prohibited by different statutes which have been in force ever since Missouri was a State and, in fact, they were a part of the Territorial law (Territorial Laws of Missouri, pages 310-311). Therefore, an ordinance regulating the one cannot be said to be in conflict with a statute regulating the other.

Everything that was said in St. Louis v. Bernard, supra, in reference to the State Sunday Closing Law, now Section 3599 and the following Section 3600, exempting drugs, medicines, etc., applies with equal force to Section 3596, the Sabbath-breaking law, which prohibits persons from laboring on Sunday, and to Section 3597, which exempts those who observe another day as the Sabbath. In reference to the former, this court said in the Bernard case, supra, that it simply left the right to sell drugs, medicines, provisions and other articles of necessity where that right stood before the statute was enacted upon the subject of selling the same upon Sunday; that finding the law in this condition the city took up the proposition of the sale of provisions where the General Assembly left off, and, by the ordinance, prohibited keeping open of grocery stores and the sale of provisions therein after the hour of nine o'clock, A. M. on Sundays. Applying this language to the statute prohibiting Sunday labor, it follows that the law simply leaves the right of persons who observe another day as the Sabbath to labor on Sunday where it stood before any statute on the subject of Sunday labor was enacted; that finding the law in this condition, the city (if the ordinance can be held to have any relation to Sunday labor) has prohibited its performance after nine o'clock in the forenoon on Sundays, as it had a right to do.

In City of St. Louis v. DeLassus, 205 Mo. 578, we upheld an ordinance of that city which prohibits keepers of meatshops from making sales therein after nine o'clock, A. M. on Sundays. In that case GANTT, J., speaking for the court, reviewed the Constitution, statutes and adjudicated cases in sustaining the validity of the ordinance. The reasons adduced in support of the conclusion there reached are applicable here.

316 Mo.—2.

Plaintiff's fifth contention is that the ordinance is void in that it violates his religious liberty as guaranteed under Section 5, Article

**Religious Liberty.** II, and that it deprives him of his property without due process of law, under Section 30, Article II of the State Constitution. The constitutionality of Sunday-closing laws in whatever phase they have been presented and regardless of the classes to which they have been applicable have uniformly been upheld from the rendition of the lucid and exhaustive opinion of Judge SCOTT in State v. Ambs, 20 Mo. 214, down to the latest utterances of this court. It will profit nothing to review these cases, as they hold, as was stated in St. Louis v. DeLassus, supra, that: "The constitutionality of our Sunday law was affirmed in 1854 in State v. Ambs, and such laws have been held constitutional in almost every State in the Union, on the ground that wisdom dictates that men should refrain from labor at least one day in seven in order to promote the physical and moral well-being of society at large. These acts are sustained as municipal or police regulations without reference to the fact that the day of rest is also the Christian's day of rest and worship."

The due-process clause of the Constitution, Section 30, Article II, was not in our organic law at the time of the rendition of the opinion in State v. Ambs, supra; it first appears in the Con-

**Due Process.** stitution of 1865, as Section 18, Article I, and the protection it assures was, in the language in which it is now expressed, incorporated in the present Constitution. It was, therefore, a part of our Bill of Rights when the later decisions of State v. Railroad, 239 Mo. 196, and St. Louis v. DeLassus, 205 Mo. 578, were rendered. These cases sustain the validity of Sunday closing laws on the ground that they are police regulations. Such regulations being within the enacting power of the State and any of its subdivisions are held not to violate the due-process clause of the Constitution, State v. Goetz, 253 S. W. (Mo.) 710; Ex parte Roberts, 166 Mo. 207.

Further, as to the molestation of plaintiff and his estate on account of his religious persuasion. Primarily this ordinance is but an

**Religious Molestation.** industrial regulation. The authority for its enactment is found in the State's police power, which has been delegated to the city. However much the conscientious scruples and religious conviction of the plaintiff may be entitled to respect, if there is to be a cessation from labor under the requirements of the law at any particular time, a day must be designated for that purpose, even though the one selected be regarded by a great majority of the people as one of particular sanctity. It is not for this reason that the day is selected, but to so regulate the business of the community as to promote its moral and physical welfare. No religious ceremony is imposed upon any one by the enactment of this

ordinance; nor is anyone required to attend upon or observe any form of worship. One who deems another day more suitable for rest or worship may devote that day to that purpose. A statute or an ordinance, as in the present instance, which leaves the individual who deems another day for religious observance more appropriate, free to. observe such day, cannot be said to interfere with the freedom of his religious belief. Constituting no interference, therefore, with liberty of conscience or freedom of worship, although he may conscientiously observe the seventh day of the week, he may be compelled, like every other citizen to abstain from the pursuit of any secular vocation on the day designated by law, regardless of the fact that it may be the first day of the week or Sunday. Being a member of the community he must, with a proper regard for the duties of citizenship, submit to such authorized regulations as have been made to control and direct the business of the community. The books are replete with annunciations of this doctrine and the citation of cases to support it are unnecessary.

The sixth contention is but a repetition of the second and has been discussed.

The seventh, eighth, ninth and tenth contentions invoke the protection of the Federal Constitution, Amendments V and XIV, which **Equal Protection.** it is alleged are violated by the ordinance in depriving the plaintiff of the equal protection of the law. The Fifth Amendment has been repeatedly held to relate to the National Government and not to the States. [Capital Dairy Co. v. Ohio, 183 U. S. 238, 46 Law Ed. 171; Brown v. New Jersey, 175 U. S. 172, 44 Law Ed. 119.] There is, therefore, no merit in the contention that this amendment is violated.

We have shown that in the enactment of this ordinance the city was within the purview of its police power. Thus acting it was not in violation of the Fourteenth Amendment of the Federal Constitution. This rule is well established and needs no gloss to confirm its correctness. [Hennington v. Georgia, 163 U. S. 299, 41 Law Ed. 166; Petit v. Minnesota, 177 U. S. 164, 44 Law Ed. 716; Brunswick-Balke v. Evans, 228 Fed. 991.]

In the Hennington case the court, in discussing this question said: "Courts are not concerned with the mere beliefs and sentiments of legislators, or with the motives which influence them in enacting laws which are within legislative competency. That which is properly made a civil duty by statute is none the less so because it is also a real or supposed religious obligation; nor is the statute vitiated, or in anywise weakened, by the chance, or even the certainty, that in passing it the legislative mind was swayed by the religious rather than by the civil aspect of the measure. Doubtless it is a religious duty to pay debts, but no one supposes that this is any obstacle to its

being exacted as a civil duty. With few exceptions, the same may be said of the whole catalogue of duties specified in the Ten Commandments. Those of them which are purely and exclusively religious in their nature cannot be made civil duties, but all the rest of them may be, in so far as they involve conduct as distinguished from mere operations of the mind or states of the affections. Opinions may differ, and they really do differ, as to whether abstaining from labor on Sunday is a religious duty; but whether it is or is not, it is certain that the Legislature of Georgia has prescribed it as a civil duty. The statute can fairly and rationally be treated as a legitimate police regulation, and thus treated it is a valid law. There is a wide difference between keeping a day holy as a religious observance and merely forbearing to labor on that day in one's ordinary vocation or business pursuit.''

In his eleventh contention plaintiff maintains that the ordinance violates Section 30, of Article II, of the Constitution of this State. We have shown in the discussion of this section that the plaintiff has not, by this ordinance, been deprived of due process of law and this complaint must go for naught.

It is only necessary to say in regard to the plaintiff's twelfth contention that the ordinance having been shown to be well within the city's police power this contention must be held to be without merit.

Contention thirteen is that the ordinance is invalid in not conforming in its enactment to Section 7641, Revised Statutes 1919, and Article IV, Section 13, Charter of St. Louis, which define the requisites of a proper title. This point is not stressed in the plaintiff's brief. We have, however, examined the title to ascertain whether it is sufficiently clear and full to correctly indicate the object and purpose of the enactment.

**Title.**

As properly stated by the respondent, the objection of non-conformity of the title of the ordinance to the requirements of Section 7641, Revised Statutes 1919, does not merit consideration for the reason that said section has reference to cities of the first class, to which St. Louis does not belong. The city of St. Louis being chartered by the Constitution is separate and apart from the four divisions of municipalities prescribed by the Constitution. [State ex rel. McDaniel v. Schramm, 272 Mo. 541 and cases, 199 S. W. l. c. 195.]

The sufficiency of the title, measured by the requirements of Section 13, Article IV, of the City Charter, is found to conform to said section. Its context, while single, is certain and sufficiently ample to clearly define the object and purpose of the enactment. [St. Louis v. Weitzel, 130 Mo. 600; State v. Whitaker, 160 Mo. 59.]

The fourteenth contention is that the ordinance is invalid in that it prefers one religion, creed or church and discriminates against the plaintiff's creed and faith. The language of the ordinance gives countenance to no conclusion of this character. General in its terms, equably uniform in its application and salutary in its purpose it contains nothing which even the jaundiced eye of self-interest can find to sustain the assumption that it is directed against any cult, creed or character of religious belief. We therefore hold it to be sufficient.

**Religious Preference.**

The contention is also made that the ordinance is void as special legislation. In a number of cases here and elsewhere ordinances of the character of that under review have been held not to be special to the extent of impinging upon the organic law. This subject has been learnedly discussed by GANTT, J., in the DeLassus case, in which State v. Granneman, 132 Mo. 326, is discussed and distinguished as not announcing generally the correct rule in regard to the classification of ordinances of this character. [See cases cited in the DeLassus opinion.]

We have reviewed with care every phase of this case submitted by the appellant and, measured by the rules of interpretation, we find no merit in any of them.

In the absence of error in the hearing of this proceeding the judgment of the trial court is affirmed. It is so ordered. All concur.