STATE OF MISSOURI *ex rel.* JOSEPH P. GALLAGHER, Appellant, v. JOSEPH BROWN, Auditor of the City of St. Louis, Respondent.

St. Louis Court of Appeals, March 20, 1894.

1. **Removal of Officers**: IMPLIED POWERS. A general power to remove a municipal officer, appointed or elected for a definite term, confers only the power of removal for cause, by which is meant removal upon charges, notice and trial. The power to remove such an officer at pleasure will not be implied; it exists only when expressly given.

2. ———: REMOVAL OF SUPERINTENDENT OF POOR HOUSE OF CITY OF ST. LOUIS. Accordingly, since the charter of the city of St. Louis confers on the board of commissioners on charitable institutions a general power to remove any appointed officer of such an institution without designating the conditions under, or manner in which, this power shall be exercised, it confers only a power to remove the superintendent of the poor house of that city for cause as above defined.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Warwick Hough* and *Warwick M. Hough* for appellant.

Section 49 of article 4 of the charter was never intended to give the commissioners power to arbitrarily remove the superintendents of the city hospital, female hospital, insane asylum and all their assistants, contrary to the wishes of the mayor and council, and the health commissioner and the board of health. Yet the construction of this section contended for by the respondent would give them such power. At common law, an officer could be removed only for cause, and

after a hearing. Throop on Public Officers, sec. 362. And the power to remove at pleasure, and without charges, notice and hearing, must be expressly conferred, else it will be held not to exist. *Field v. Commonwealth*, 32 Pa. St. 478; Throop on Public Officers, sec. 362; *Hallgreen v. Campbell*, 82 Mich. 255.

*Leverett Bell* for respondent.

BOND, J.—The appellant applied to the circuit court for a writ of *mandamus* against respondent as the auditor of the city of St. Louis, requiring him to audit the account of appellant for salary as superintendent of the poor house from the twenty-second day of August, 1892, to the thirtieth day of November, 1892, at the rate of $125 per month, the total amount being $411.29:

The petition alleged that appellant was, during the time covered by his salary account, the duly appointed, qualified and acting superintendent of the poor house of the city of St. Louis, for a term of four years from the date of his appointment and confirmation as such, to wit, March 16, 1892, and had taken the necessary steps to entitle him to have his said account audited by respondent; that as such superintendent appellant was entitled, under the charter and ordinances of St. Louis, to receive a salary of $1,500 per year, payable monthly, but that respondent refused to audit and issue his warrant for said amount.

An alternative *mandamus* was issued, to which respondent made return, setting forth as the ground of his refusal to audit appellant's salary that, on August 22, 1892, by the unanimous vote of the commissioners on charitable institutions, appellant was removed from said office as superintendent of the poor house, and that the mayor of the city was notified at the time of

this action by said commissioners, and was requested by said commissioners to fill the vacancy; wherefore respondent averred that no part of the salary aforesaid is due or owing to said appellant. A demurrer to the return was overruled. On the trial of the demurrer the court considered the following ordinance, "as if the same had been pleaded in the cause:"

"The commissioners on charitable institutions shall have a general visitorial supervision over all penal and charitable institutions supported wholly or in part by the city, and shall have full authority at all times to inspect and examine the condition of such institutions, financially and otherwise; to inquire and examine into their methods of instruction, and the government, treatment and management of their inmates; the official conduct of managers, superintendents, and all other officers and employees of the same; the receipts and expenditures of money; the condition of the buildings, grounds and other property connected therewith, and into all other matters pertaining to their usefulness and good management; and for these purposes they shall have free access to the grounds, buildings, and all books and papers relating to said institutions, and all persons now or hereafter in any manner connected with the same are, hereby directed and required to give such information and afford such facilities for inspection as the said commissioners may require, and any neglect or refusal on the part of any officer or person connected with such institution to comply with the requirements of this section shall be deemed a misdemeanor, and upon conviction thereof, before either of the police justices of the city of St. Louis, shall subject the offender to a penalty, for each and every refusal, of a sum equal to one-tenth of the amount annually paid such person as wages or salary. They shall have power, by a unanimous vote, to remove any

appointed officer or employee of such institution, and shall, in case of such removal, notify the mayor and request him to fill the vacancy; but he shall have no power to reappoint any person so removed by the commissioners; *provided, however*, that before any such removal shall be made, the person accused shall have a full, open and impartial hearing before the commissioners." Section 67, p. 460, Revised Ordinances, 1887.

His demurrer being overruled, the relator duly excepted, and declined to plead further; thereupon the court rendered final judgment against him, from which this appeal is taken.

The alternative writ is the first pleading in *mandamus* proceedings. The return thereto corresponds to the ordinary answer: "If any distinction exists, it would seem that even greater strictness is required in the fullness, or completeness, of the return than in the answer." *State ex rel. v. Beyers*, 41 Mo. App. 507.

The admitted facts under the pleadings in this case, as amended by stipulation, are: *First.* That the relator was superintendent of the poor house of the city of St. Louis by virtue of an appointment of the mayor of said city, and confirmation thereof by the council, for a term of four years, beginning March 19, 1892. *Second.* That the board of commissioners on charitable institutions unanimously voted his removal from that office at a session of that body held on the twenty-second day of August, 1892, and gave due notice of their action to the mayor of the city. *Third.* That the board of charity commissioners exercised its power of removal before any charges were made against relator as superintendent of the poor house, and without notice to him, or a trial of any of such charges. It is apparent that these facts present only one question for decision, viz., whether or not the board of commissioners on charitable institutions had jurisdiction,

without notice to him, or hearing of charges, to remove relator as superintendent of the poor house before the expiration of the definite term of his appointment.

The commissioners on charitable institutions are an unsalaried body, made up of five appointees of the mayor of the city; they hold office for four years, and "have a general visitorial supervision over all penal and charitable institutions supported wholly or in part by the city." The charter defines the power of this body, to wit: "They shall have power, by a unanimous vote, to remove any appointed officer or employee of such institution, and shall, in case of such removal, notify the mayor and request him to fill the vacancy. The mayor shall have no power to reappoint any person removed by the commissioners." Scheme and Charter, article 4, sections 2, 49 and 50.

It will be noted that the charter is silent as to what, if any, proceedings shall be taken before removal, and is express only as to the exertion of the power of removal. In other words, when a removal is to be made by this body, it can only be affected by a unanimous vote; but what steps are to be taken, or what proceedings are to be had before this vote shall be cast, are not expressly set forth in the city charter.

What then is the legal conclusion arising from this failure to specify the method of procedure before amotion? Under the law, there are two ways of removing a public officer: *First*, for cause, by which is meant charges, notice and trial; *second*, without cause, at will or upon caprice.

As neither of these methods is expressly authorized in the section *supra* of the charter, the question is, which of the two is implied by the general law, and the contextual provisions of the charter, as well as the nature and purposes of the creation of the board of charity commissioners?

The general rule is, that an election or an appointment to office for a definite term carries with it the right to serve the full period, unless sooner forfeited by misbehavior. Upon this principle it has been held that the incumbent of a definite term was not removable, except for cause, where the removal was not *expressly* declared to be exercisable at pleasure. *Hallgren v. Campbell*, 82 Mich. 255.

It is fixity of tenure that destroys the power of removal at pleasure otherwise incident to the appointing power. *State ex rel. v. Police Commissioners*, 14 Mo. App. 302. The reason of this rule is the evident repugnance between the fixed term and the power of *arbitrary* removal. The effect of this rule is, that the right to hold during a fixed term can only be overcome by an express grant of power to remove at pleasure.

An inferential authority to remove at pleasure can not be deduced, since the existence of a defined term, *ipso facto*, negatives such an inference, and implies a contrary presumption, *i. e.*, that the incumbent shall hold to the end of his term, subject to removal for cause.

This reasoning is in exact accord with that employed by the supreme court. *State ex rel. Denison v. City*, 90 Mo. 19. In that case, which arose upon a *certiorari* to test the validity of the removal of a police justice who had been appointed by the mayor and confirmed by the council for a term of four years, it was said in reference to the necessity of giving the appointee notice of charges, and an opportunity to be heard: "But in case of the removal of an appointed officer, no such specific provisions are made. It does not follow from all this, as is contended by the defendants, that the appointed officer is entitled to no notice. * * * But the charter does not say, nor is it fairly deducible therefrom, that an appointed officer may be

removed without notice." In other words, no infer-
ence dispensing with notice arose from the failure of
the charter to require it. It was accordingly held that
the removal of the police justice, not having been
made upon a notice of charges, and opportunity to be
heard, was invalid.

Our conclusion is that, under the mere grant of
power to remove given to the commissioners on chari-
table institutions, they could not lawfully remove the
relator before the expiration of his term, except for
cause. This result is in strict harmony with the provis-
ions of the charter governing the exercise of the power
of removal of officers vested in the mayor and the
city council.

The mayor and city council have full power of
removal of all appointed officers, but neither can exercise
this power except for cause. Article 4, sections 5, 8
and 12, of the city charter. *State ex rel. Denison v.
City, supra.* Unless the same method of procedure is
attached to the exercise of the power of removal by the
board of charity commissioners, we have the singular
incongruity of an appointive board possessing a larger
measure of power in the removal of officers than that'
possessed by the power that created it in exercising
jurisdiction over the same officers.

Not only is this conclusion opposed to the analo-
gies drawn from the charter as a whole, but it is not in
keeping with the nature and objects for which the
board in question was formed. The language of the
charter and the ordinance was evidently intended to
give the commissioners of charitable institutions visito-
rial supervision, with incidental power to effectuate the
same, somewhat akin to that enjoyed by the visitors
of eleemosynary corporations at common law. It was
the well settled rule of the common law that the office
of the visitor was judicial in its nature. *Philips v. Bury,*

1 Raymond, pp. 5 and 8. There is therefore a strong analogy between the judicial action taken by the visitor before a removal at common law, and the conclusion we have reached as to the power and functions of the board of charity commissioners under the charter.

The ordinance made part of the pleadings by stipulation, and definitive of the duties and powers of the commissioners on charitable institutions and regulating removals by such commissioners, contains the following clause: "*Provided, however*, that before any such removal shall be made, the person accused shall have a full, open and impartial hearing before the commissioners." Revised Ordinances of 1887, p. 461, section 67.

The above ordinance was enacted under the following grant of legislative power to the city of St. Louis, to wit: "To regulate and provide for the election or appointment of city officers required by this charter, or authorized by ordinance, *and provide for their suspension or removal.*" Art. 3, sec. 26, subsec. 8, of the city charter.

With reference to the validity and force of an ordinance, passed by the municipal assembly of this city in the exercise of its governmental or legislative capacity, the supreme court in a recent case used the following language: "The legislators of a city, when assembled for the performance of their legitimate functions, and when acting within the confines of their delegated authority, constitute, as Judge Scott happily expressed it in *Taylor v. Carondelet*, 22 Mo. 105, 'a miniature general assembly,' and 'the lawmaking power gives their ordinances the force of laws passed by the legislature of the state.' Lord ABINGER said: 'The by-law has the same effect within its limits, and with respect to the persons upon whom it lawfully operates, as an act of parliament has upon the subjects at large.' " *Reid v.*

*Walbridge*, 24 S. W. Rep. 457.

The ordinance *supra* was passed in furtherance of a clear and explicit delegation of power to that end. It is not inconsistent with the charter itself, nor the laws and constitution of this state.

It is therefore clearly within the protection of the rule, as above announced by the supreme court, and furnishes the guide and method of procedure for the board of charity commissioners in the exercise of the power of removal vested in them by the city charter.

Our conclusion is that the circuit court should have sustained the demurrer to the return, since it does not show that relator was removed for cause, *i. e.*, upon hearing of charges of which he had notice, and an opportunity to be present. High on Extraordinary Remedies, section 460. The result is that the judgment of the circuit court is reversed and the cause remanded for repleader by respondent, if he is so advised.

It is so ordered. All concur.