**RIDGWAY v. CITY OF FORT WORTH et al.**
**(No. 9967.)**

(Court of Civil Appeals of Texas. Fort Worth. May 6, 1922. Rehearing Denied July 1, 1922.)

1. **Municipal corporations** ⚖️155—"Discretion" of city commissioners in removing officers means exercise of discretion in good faith.

A charter provision that city commissioners may "at their discretion" remove corporation counsel only "for such causes as would occasion removal of a member of the board of commissioners" does not empower the commissioners, even for causes specified, to remove corporation counsel at their uncontrolled will, notwithstanding under Revised Ordinances of the City of Fort Worth, tit. 1, § 6, such removal of other appointees may be accomplished; the term "discretion" meaning legal discretion exercised in good faith.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Discretion.]

2. **Officers** ⚖️72(1)—Public officer is entitled to notice and hearing before removal, notwithstanding the law does not so expressly provide.

A public officer, holding for a fixed term subject to removal for cause, is entitled to notice and hearing, in order that he may have opportunity to defend, notwithstanding the law conferring authority to remove does not expressly provide for notice.

3. **Officers** ⚖️66—Statute or Constitution specifying causes for removal limits removal to such causes.

Where power is granted by statute or Constitution to remove a public officer for certain specified causes, the power of removal is limited to the causes specified.

4. **Officers** ⚖️70—Grant of power to remove public officer carries means therefor as incidental to the grant.

The grant of power given to remove a public officer, without provision for its effectuation, carries, as incidents to the grant, all means necessary to effectuate the power.

5. **Municipal corporations** ⚖️159(4)—Removal of corporation counsel under authority of city charter must be made upon due notice giving officer opportunity to defend.

Under the Fort Worth City Charter, providing that the commissioners may "at their discretion" remove the corporation counsel from office only "for such causes as would occasion removal of a member of the board of commissioners," but providing no procedure for ascertaining the specified causes, the power of removal is not absolute, but must be made upon due notice, in order that the counsel may have opportunity to defend, notwithstanding appointive officers may, under Revised Ordinances, tit. 1, § 6, be removed in a more summary manner; this construction of being influenced by Fort Worth City Charter, c. 2, § 12, expressly providing for preferment of charges

and notice of hearing where elective officers are removed.

**6. Appeal and error ⬅931(3)—Provision that issue not submitted will be deemed found by trial court applies only to cases submitted to juries.**

Rev. St. .art. 1985, providing that "upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support a judgment, provided there be evidence to sustain such finding," applies only to jury cases, but not to cases tried by the court where findings of fact are filed.

**7. Appeal and error ⬅934(2)—Presumption that evidence supports judgment not applicable if findings are in the record.**

Presumption of proof to support correctness of trial court's judgment does not apply where there are findings in the record, since appellant may, by excepting thereto, generally have the trial court's conclusions tested by the facts stated as their basis.

**8. Mandamus ⬅174—Findings of fact held not to show that corporation counsel had notice or hearing before removal from office.**

Findings of fact by the district court upon corporation counsel's petition for mandamus to reinstate him in office after removal by board of commissioners acting under charter provision of the city of Fort Worth, examined, and *held* not to show that the trial court expressly found that corporation counsel had notice of charges upon which the board proposed to act, where notice could only be implied from the court's findings that appellant was called before the board and had the removal resolution read to him, and the only specification of cause for removal contained in the resolution was that the counsel was "incompetent."

**9. Municipal corporations ⬅159(5) — The term "incompetent" or "incompetency" is generic, and, applied to municipal officers, charge of incompetency is not sufficient.**

The term "incompetent" or "incompetency" is generic in its meaning, and of itself conveys no information of the particular act, and general allegations of incompetency or unfitness of corporation counsel constitute no sufficient cause for removal of an official from office (quoting Words and Phrases, Incompetent).

**10. Municipal corporations ⬅159(5)—Charges upon removal of corporation counsel held insufficient to show proper allegations of cause.**

Where the board of commissioners of Fort Worth acting under power to remove corporation counsel given by the charter called him before the board without due notice and read the removal resolution to him, and the only reason for removal was that he was incompetent, with no specifications of particular delinquencies or showing that the delinquencies were otherwise called to his attention, or that he waived his right to notice and hearing, there was no sufficient allegation of incompetency to constitute cause for removal, notwithstanding the commissioners acted in good faith and had specific delinquencies in mind which, if properly alleged, might constitute adequate cause.

**11. Mandamus ⬅16(1)—Writ for reinstatement of public officer not denied on theory that reinstatement would be useless, where charges were not sufficient to justify removal.**

Writ of mandamus will not be denied to reinstate corporation counsel, who was illegally removed by board of commissioners acting under a city charter on the contention of the resisting parties that the court's findings of fact warranted the conclusion that the commissioners acted in good faith and the counsel was in fact incompetent, and that, although specific charges were not preferred and due notice of hearing was not given, restoration to office would be useless because the commissioners could readily remove the counsel upon proper preferment, since upon proper hearing it cannot be said that the counsel could not establish his competency.

**12. Constitutional law ⬅277(2), 328 — Appointive officer, duly installed, is entitled to office until legally removed in due course of law; courts to be open to officer illegally removed from office.**

Under Const. art. 1, § 13, providing that courts shall be opened and a remedy afforded for injuries, and article 1, § 19, providing for due course of law, where city commissioners, in performing their duties as representatives, make due inquiry as to eligibility and qualifications and appoint a corporation counsel in good faith for a period fixed by charter, the incumbent secures the legal right to the office during the term of appointment, unless legally removed after due charges and hearing, and where illegally removed courts will reinstate.

Buck, J., recused, not sitting.

### On Motion for Rehearing.

**13. Municipal corporations ⬅159(4)—Corporation counsel held not to have waived his right to hearing upon removal from office.**

Where city commissioners, in attempting to remove corporation counsel under power contained in the Fort Worth City Charter, called him before them without due notice and read to him the resolution of removal, making only a general allegation of incompetency, with no opportunity to counsel to be heard and the one privilege presented of resigning, the counsel in thus appearing did not waive his constitutional right to due notice and hearing.

**14. Mandamus ⬅168(2)—Burden of proof is upon parties resisting writ to reinstate public officer to show that he is not qualified.**

While application for mandamus must anticipate and answer every objection which may be urged against it, this rule is one of pleading, and not one relating to the proofs, and where application is made to compel reinstatement of a public officer after alleged wrongful removal, with complete allegations of his qualifications and competency, the burden of proof is not on applicant to sustain these allegations, but on those resisting the application to overthrow them.

**15. Appeal and error &#9758;801(4)—Motion to dismiss appeal presenting questions going to merits not before urged does not affect jurisdiction to determine appeal.**

Where respondents, on relator's appeal from a judgment denying his petition for mandamus to reinstate him in public office, move to dismiss the appeal on the ground that relator, who held the office of corporation counsel, was not eligible because of nonresidence and want of license to practice in certain courts, these questions go to the merits, and in no wise affect jurisdiction to determine the appeal; these issues not being available to respondents, especially as they were not urged upon trial against relator's allegations that he was in all respects eligible.

Buck, J., recused and not sitting.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Application for writ of mandamus, brought to the county court of Tarrant county, on the relation of R. Bonna Ridgway, against the City of Fort Worth and others, to compel the board of commissioners of the city to restore him to office. Upon issues joined and a trial upon the merits, judgment was rendered denying the relief sought, from which relator appeals. Judgment reversed, and cause remanded, with instructions to issue the writ as prayed.

Ocie Speer, of Fort Worth, for appellant. Rhineheart Rouer, Gillis Johnson, Miller & Miller, and Rowland & Brown, all of Fort Worth, for appellees.

CONNER, C. J. This is an appeal from a judgment denying the prayer of R. Bonna Ridgway for the issuance of a writ of mandamus against the board of commissioners of the city of Fort Worth to restore him to office. In his petition for the writ it was alleged, and the facts so show, that the relator R. Bonna Ridgway had been legally appointed, on the 16th day of April, 1921, to the office of corporation counsel for the city of Fort Worth; that he duly qualified as such and entered upon the duties of such office; that afterwards, on or about July 9, 1921, the board of commissioners of said city, composed of respondents E. R. Cockrell, mayor, W. B. Townsend, Paul Gilvin, J. C. Lord, R. A. Hunter, and John Alderman, commissioners, passed a resolution removing the relator from office. The resolution so passed will be found in the trial court's conclusions of fact hereinafter copied.

It was further alleged by the relator that he was in all things competent to fill his said position and capable of performing the duties thereof satisfactorily, and that said order was induced by the personal ill will of the members of said board; that at and prior to the passage of said resolution no charges other than as presented in the reso-

lution had been filed before the board of commissioners, nor had relator been served with a copy of any charge, nor was there any setting of the case, nor any opportunity given to relator for a hearing; that there was no trial of any sort and no evidence heard, but that the board attempted to remove the relator under what they contend to be a discretion lodged with them by the terms of the charter of the city of Fort Worth.

It was further alleged that from and after the passage of the resolution above mentioned the board of commissioners had refused to recognize the relator as corporation counsel for the city of Fort Worth, and he accordingly prayed for the issuance of the writ of mandamus to compel his restoration to office.

The respondents above named appeared and answered, expressly admitting the corporate existence of the city, the election and qualification of the respondents as mayor and commissioners, and also admitted the relator's appointment and qualification as corporation counsel, as alleged by him, and the passage of the removal order. The respondents denied, however, that the order of removal was dictated by any personal ill will or spite, but alleged that it had been so made and entered in good faith, and because of the relator's incompetency in particulars specifically set forth in the answer.

Upon the issues thus joined, a trial upon the merits was regularly had before the court, and judgment was entered, denying the relief sought, from which judgment, as already stated, the relator has duly prosecuted this appeal.

There is no statement of facts, and the case is submitted to us upon the court's written findings of fact and conclusions of law, which read as follows:

"Upon request of the relator, R. Bonna Ridgway, the court files the following findings of fact and conclusions of law:

"(1) The court finds that the defendant city of Fort Worth is a municipality existing under and by virtue of an act passed by the Thirty-First Legislature of the state of Texas in A. D. 1909, and approved March 10, A. D. 1909, by the Governor of the state of Texas, which said act of the Legislature constitutes the charter of the city of Fort Worth, and by and through and under which the city of Fort Worth and its officers provided for in said charter are vested with such powers and authority as said act of the Legislature provides.

"(2) That the defendants W. B. Townsend, J. C. Lord, Paul Gilvin, R. A. Hunter, and John Alderman are at this time, and have been since the 16th day of April, A. D. 1921, the duly elected, qualified, and acting commissioners of and for the city of Fort Worth, which are provided for in the said charter, and that the defendant E. R. Cockrell, is now, and has been at all times since the 16th day of April, A.

D. 1921, the duly elected, qualified, and acting mayor of and for the said municipal corporation, as is provided for in the said charter.

"(3) The court finds that the mayor and board of commissioners of the said city of Fort Worth were empowered with the authority to, and acting under such authority did, appoint the relator, R. Bonna Ridgway, on, to wit, April 16, 1921, corporation counsel in and for the said city of Fort Worth; that the said relator is an appointive officer of said city, and that under the charter provisions the term of the office of the said corporation counsel is and was for a period of two years from and after the day of his appointment, unless sooner removed in accordance with the provisions of the said charter; that the said relator took the oath of office and entered into the office of corporation counsel in and for said city on April 16, A. D. 1921. That the facts alleged in relator's petition and specifically admitted in respondents' answer are true.

"(4) The court finds that section 30 of chapter 11 of the charter of said city provides as follows: 'The board of commissioners shall have the power by majority vote of all members, to remove any appointive officer at their discretion; provided, however, that the term of office of the corporation counsel shall be for a period of two years, and such officer shall not be removed, except for such causes as would occasion removal of a member of the board of commissioners.'

"The court further finds that the members of the board of commissioners are elective officers under the provisions of said charter, and the court further finds that section 12 of chapter 2 of the charter of the city of Fort Worth provides that the board of commissioners shall have the power to remove any elective officer for incompetency, corruption, malconduct, malfeasance or nonfeasance in office, or such other causes as may be prescribed by ordinance, after notice in writing and opportunity to be heard in his defense, under the rules and regulations herein set forth, and that said section 12 provides the manner of trial.

"(5) The court finds that no formal charges were filed by any person with the board of commissioners of the city of Fort Worth against the relator, R. Bonna Ridgway, but that a resolution in writing was filed with the city secretary of the city of Fort Worth declaring that the relator is incompetent to fill the position of corporation counsel in and for said city, providing for his removal from such office and declaring said office vacant from and after the passage of such resolution; that on or about the 8th day of July, A. D. 1921, the respondents, said board of commissioners and the mayor, called the relator before them, advised him of the fact that they did not desire his services further as corporation counsel, requested that he tender his resignation to them as such; that the relator declined to do so, and requested that no action be taken until 10 o'clock on the following day, to wit, July 9, A. D. 1921, and that on or about 10 o'clock a. m. July 10, A. D. 1921, the relator presented himself before said defendants, mayor, and board of commissioners, and was again requested to tender his resignation as corporation counsel, and the resolution referred to was read to him; that the relator then and there refused to tender his resignation as such officer; that then the mayor and five commissioners were duly and lawfully assembled in the regular meeting place in the city hall of the city of Fort Worth for the purpose of taking up and disposing of matters properly coming before them for attention, and that the relator was present; that in the course of business the duly appointed city secretary presented and read the resolution above referred to; that commissioner R. A. Hunter moved the adoption of the resolution, and Commissioner Paul Gilvin seconded the motion for such action; that thereupon the mayor put the question of the adoption or the rejection of the resolution declaring the relator incompetent to discharge the duties of corporation counsel and removing him from office as such, and declaring such office vacant from and after the passage of, such resolution, whereupon Commissioners Lord, Gilvin, Alderman, and Hunter voted for the adoption and passage of the aforesaid resolution, and Commissioner Townsend voted against the adoption of the said resolution; that the resolution was adopted by a four-fifths majority of the entire board of commissioners of the city of Fort Worth.

"(6) The court finds that from official and personal association and contact with the relator, since his appointment by them as corporation counsel, and from the conduct and acts of the relator while acting as corporation counsel, all of which were fully known to the board of commissioners and mayor, and each of them, that the said commissioners who voted to remove the relator as corporation counsel were capable of and warranted in arriving at a judgment and conclusion in their discretion as to the competency or incompetency of the relator; that the majority of the members of the board of commissioners who voted for the removal of the relator because of his incompetency to fill the position of corporation counsel voted for such resolution, and removed the said relator from said office thereby without being impelled or moved to do so from any malice, ill will, or desire for revenge or for any other cause, as has been alleged by the relator, and that in so voting and so removing the relator the said members and board of commissioners did not abuse the discretion vested in them, or any of them.

"(7) The court further finds that the respondent R. E. Rouer is not acting in the capacity of corporation counsel, and that up to the time of the trial of this cause the board of commissioners has not appointed any successor to the relator; that the respondent Rouer is now and has been since April 16, 1921, acting in the capacity of special corporation counsel in and for said city.

"Conclusions of Law.

"The court concludes, as a matter of law, as follows:

"1. That under the provisions of the charter of the city of Fort Worth, the relator was not entitled to the kind and character of hearing and trial as is provided for in section 12 of chapter 2 of the charter of the city of Fort Worth, providing for the removal of elective officers.

"2. That the board of commissioners of the said city under and by virtue of section 30 of

chapter 11 of the charter of the city of Fort Worth were vested with the power and authority to remove the relator in the manner and at the time in which the relator was removed.

"3. That the relator was, by virtue of the authority and power vested in the board of commissioners of the city of Fort Worth, lawfully removed from the office of corporation counsel on July 9, A. D. 1921.

"4. That the relator is not entitled to the peremptory writ of mandamus prayed for by him, and that the prayer for the issuance of said writ is, by this court, denied."

In addition to section 30, chapter 11, of the charter of the city of Forth Worth, set out in the fourth paragraph of the court's findings, we quote in full section 12 of chapter 2 of said charter referred to, but not copied in the same paragraph of the findings, to wit:

"The board of commissioners shall have the power to remove any elective officer for incompetency, corruption, malconduct, malfeasance, or nonfeasance in office, or such other causes as may be prescribed by ordinance, after notice in writing and opportunity to be heard in his defense, under the rules and regulations herein set forth. That whenever charges are preferred in writing under oath, or when information otherwise comes to the knowledge of any of the commissioners against any such officer for any or all of the offenses named or provided for above, it shall be his duty or their duty to have the accused duly served with a copy of such charges, and shall set a day to inquire into the truth of such charges, and shall notify the accused and other members of the said board, and the witnesses for and against the accused, to be present, and the said board of commissioners shall constitute a court to try and determine the case, and they are hereby vested with the exclusive jurisdiction to hear and determine said charges, and may continue the investigation from day to day upon proper showing to enable the accused or prosecutor to get material evidence before said board. The accused shall have the right to be heard in person or by counsel, and said board shall likewise be represented by counsel, if they desire it. Upon the conclusion of the investigation and argument of the case, a vote shall be taken on each charge and specification, and if a majority of all the members of said board vote to sustain either of the charges against the accused, said board shall enter or cause to be entered its judgment, in which shall be recorded the vote of each member of the board, upon the several charges and specifications, and an order shall be entered, removing the accused from his office and declaring the same vacant. But if the vote is otherwise, the accused shall be declared not guilty, and judgment entered accordingly."

In this connection we also quote section 6 of title 1 of the Revised Ordinances of the City of Fort Worth,' which reads as follows:

"All officers of the city of Fort Worth whose position comes by appointment from the Board of Commissioners may at any time be removed from office by a vote of the majority of said board, and in making said removal, it shall not be necessary, nor shall it be required, to assign any reason therefor. That such removal shall take place by a mere order to that effect by said board of commissioners and thereupon and thereafter all right to salary or compensation on the part of said officer so removed shall absolutely cease and determine."

It may be thus seen that three classes or methods of removal are provided for; that as to the appointive officers of the city other than the corporation counsel, the board of commissioners are given the power to remove at will, without notice, and without being required to assign any reason therefor; that the corporation counsel can be removed only "for such causes as would occasion removal of a member of the board of commissioners," the manner, method, or procedure to be adopted by the commissioners in the ascertainment of the specified cause of removal not being provided for; that in the case of the removal of an elective officer of the city, such as the mayor or member of the board of commissioners, the method, manner, or procedure of determining the disqualifying act is pointed out.

[1] The ordinance referred to cannot, we think, be applied in the case of a removal of the corporation counsel, under section 30, chapter 11, of the charter. The expression in the charter provision just referred to that the commissioners by majority vote for the causes specified may remove the corporation counsel "at their discretion" should not be given the effect of empowering the commissioners, even for the causes specified, of removing the corporation counsel at their uncontrolled will, as may be done under the ordinance in case of appointees other than corporation counsel. The term "discretion" as used means something more than this. It must mean a legal discretion exercised in good faith, and not an arbitrary abuse of discretion. See 18 R. C. L. p. 26, § 39. It is apparent that the issues involved are important, not only to the appellant and city commissioners appearing in this case, but to all others similarly situated.

It is undisputed that the procedure specified in section 12, chapter 1, of the charter for the removal of an elective officer was not followed in the removal, or attempted removal, of the relator herein, and the first material question presented for our determination is whether the procedure referred to for the removal of an elective officer of the city is a prerequisite to an exercise of the power of removal of the corporation counsel. It is plausibly insisted in behalf of appellant that the procedure provided for in section 12, chapter 1, of the charter should by implication be read into section 30, chapter 11, of the charter. The contention, in substance, being that, inasmuch as the corporation counsel can be removed for such causes only as "would occasion" the removal of a member

of the board of commissioners, the procedure for the removal of the corporation counsel must necessarily be the same for the reason that the removal of the commissioners cannot be said to be "occasioned" without following the specified procedure.

Appellees, on the other hand, contend that, inasmuch as no procedure was specified in the section of the charter authorizing the removal of the corporation counsel, the maxim, "Expressio unius est exclusio alterius," must be applied, and hence that the method or manner of determining the cause of removal of the corporation counsel is left wholly to the discretion or will of the board of commissioners, and that the procedure specified for the removal of an elective officer is not necessary to an exercise of the power of removal of the corporation counsel.

It may be inferred that the omission in section 30, chapter 11, of the charter to specify the procedure for the removal of the corporation counsel was an inadvertent one, due to a hurried preparation of the proviso in the section, or to some other unimportant cause which does not appear, for the safeguarding provisions, prescribing notice, a hearing, etc., in case of the removal of a commissioner, would seem as reasonably appropriate in the case of the corporation counsel. It is true one secures his position for a fixed period from the qualified voters of the muncipality; the other by the votes of the commissioners acting in a representative capacity for the same electorate. Both officers are for the same term, and can only be removed for the same causes, and when considered in connection with the duties these officers are severally required to perform, it seems difficult to ascribe a good reason for saying that the offices so differ in dignity, responsibility, or importance as to specifically require protective measures before the removal of one incompetent and not the other. The commissioners, as will generally be understood, have the duty of supervising and controlling all departments of the city, subject, of course, to the limitations of the charter and ordinances. To be eligible for appointment, the corporation counsel must have been "licensed to practice law in the Supreme Court of the state of Texas and in the federal courts." See section 6, chapter 2, of the charter. His duties are thus defined in section 18 of the same chapter, viz.:

"The corporation counsel shall be the chief legal adviser of the city government and shall have entire charge of all litigation of the city, in the county, district and appellate courts of the state and in courts of the United States government. He shall pass upon the form and validity of all ordinances, resolutions and contracts of the city and shall himself frame the same when required to do so."

[2] But whatever reason may be assigned for a difference in applying protective procedure, we shall, for the purposes of this opinion, apply the rule of "Expressio unius est exclusio alterius," and say that the procedure prescribed in the case of the removal of a commissioner need not be applied in every particular in the case of the removal of the corporation counsel. Must it then be said that it was the purpose of the law to deprive the corporation counsel of all notice and opportunity to be heard upon the charges upon which the board of commissioners proposed to remove him? Assuming that the particular method or manner pointed out for the removal of elective officers need not be followed in the case of the removal of the corporation counsel, we yet feel unable to hold that the latter officer in case of the attempted removal is not entitled to a reasonable notice of the charges against him and a reasonable opportunity in some form to answer or explain, if he can, the charges. It is said in 22 R. C. L. p. 574, § 286, that:

"Although in a few jurisdictions it is held that a public officer holding for a fixed term, subject to removal for cause, may be removed without notice and hearing, the overwhelming weight of authority is that whenever a public officer holds for a definite term he is entitled to notice and a hearing in order that he may have an opportunity to defend. It does not matter that the law conferring authority to make such removal does not expressly provide for such notice, for the mere silence of the statute with respect to notice and hearing will not justify the removal of an officer whose term or tenure is declared by law, without knowledge of the charges and an opportunity to be heard. In a number of jurisdictions notice and hearing prior to the removal of certain public officers are expressly required by statutory or constitutional provisions. In harmony with these principles it has been held that a statute providing for the removal of an officer chosen for a fixed term, which makes no provision for giving him notice, or for allowing him to be heard in his defense, is contrary to a constitutional provision that no person shall be deprived of life, liberty, or property without due process of law. And notice given one hour or so before the time set for a hearing in removal proceedings of the fact that such hearing will occur is not adequate or reasonable."

[3] In Throop on Public Officers, page 358, § 362, it is said, among other things, that:

"Where power is granted, by a statute or the constitution to remove an officer for certain specified causes, that limits the power of removal to the causes so specified. And where a city charter provided for the removal of appointed officers, by a majority vote of the aldermen, and of elected officers by a two-thirds vote, and that the latter should be removed only after notice and a hearing upon charges, it was held that the charter did not give the aldermen power to remove officers appointed for a specified term, without notice and a hearing, and that the general rule applied that such officers must always have such a notice and a hearing."

[4, 5] In the case of State v. Walbridge, 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663, it is said:

"It is true that neither charter nor ordinance make any provision for the means whereby the amotion of an appointed officer is to be effected; but, where a grant of power is given, all the means necessary to effectuate the power pass as incidents of the grant. * * *

"In the case presented, the power to amove the officer is 'for cause,' and no notice is mentioned as requisite to be given to the officer to be proceeded against. But the law, in accordance with the principles of justice—principles which are fundamental and eternal—will require that notice be given before any person be passed upon, either in person, estate, or any other matter or thing to which he is entitled; and though the statutes do not, in terms, require notice, the law will imply that notice was intended. * * * And what the law will imply is as much part and parcel of a legislative enactment as though set forth in terms."

In the case of Gordon v. State, 43 Tex. 330, our Supreme Court, in discussing the power of a district judge to remove a sheriff under a constitutional provision, has this to say:

"Former decisions of this court have given a construction to the clause of the Constitution making sheriffs 'subject to removal by the judge of the district court for said county for cause spread upon the minutes of the court.' Constitution, § 18, art. 5; Davis v. State, 35 Tex. 118; Ex parte King, 35 Tex. 657.

"It has been held, and we think rightly, that this power of removal is not absolute or arbitrary, either as to the manner in which or the causes for which it may be exercised. The sheriff is entitled to notice of the charges against him and to an opportunity to be heard in his defense. The fact of his election is conclusive of his right to the office, unless some subsequent cause justify his removal. 'General allegations of incompetency' or unfitness constitute no sufficient cause. Some official delinquency, or, we will add, some act or default or occurrence since his election, showing his unfitness for the office, must be alleged against him."

While possibly cases may be found of contrary import, the quotations we have made fairly express the great weight of authority which we think we should follow. A few of the cases we will here cite without further discussion. Shurtleff v. United States, 189 U. S. 311, 23 Sup. Ct. 535, 47 L. Ed. 828; State v. City of St. Louis, 90 Mo. 19, 1 S. W. 757; State v. Brown, 57 Mo. App. 199; Hallgren v. Campbell, 82 Mich. 255, 46 N. W. 381, 9 L. R. A. 408, 21 Am. St. Rep. 557; Speed v. Detroit, 97 Mich. 198, 56 N. W. 570; Todd v. Dunlap, 99 Ky. 449, 36 S. W. 541; Laughlin v. Fairbanks, 8 Mo. 370; Wickham v. Page, 49 Mo. 526; Brown v. Weatherby, 71 Mo. 152.

[6, 7] There yet remains, however, several serious questions that we must determine before our final conclusion. The first is whether, as appellees in effect contend, appellant had notice of the charges preferred against him, and had an opportunity to defend thereon. This contention rests upon the finding of the court to the effect that appellant was called before the board of commissioners, and that he read, or heard read, the resolution which had been offered to remove him, and also upon a further contention that, inasmuch as there is no statement of facts, we must imply such finding on the part of the trial court as will support the judgment. In disposing of this contention we wish to first observe that the statutory provision that:

"Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided there be evidence to sustain such finding" (article 1985, Rev. Statutes)

—applies only to cases submitted to juries, and has no reference whatever to cases tried by the court where findings of fact are filed. In support of this proposition we quote from the headnote of Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 853:

"Though the appellate court will presume that every fact essential to the correctness of the trial court's judgment was proved, where there is neither statement of facts nor finding of the trial judge, but the rule does not apply where there are findings, since the law authorizes an appeal from them alone, and generally entitles the appellant excepting to them to have the correctness of the legal conclusions on which the judgment rests tested by the facts stated, as their basis."

The headnote quoted seems fully supported by the decisions cited, which are as follows: Continental Ins. Co. v. Millican, 64 Tex. 46; Chance v. Branck, 58 Tex. 490; Cousins v. Gray, 60 Tex. 346.

In Lyon & Matthews v. Modern Prætorians (Tex. Civ. App.) 142 S. W. 29, this court said:

"We cannot imply such a finding in the face of the fact that the judgment appears to be based upon the express findings, and, furthermore, the agreed issues contained in the record, purporting as they do to cover all the facts in the case, and there being no statement of facts, are themselves silent on this point, and would not justify such an implication."

In Baldwin v. Drew (Tex. Civ. App.) 180 S. W. 614, it is said:

"There is no statement of facts in the record showing what evidence, if any, was introduced upon these issues. The court, in its findings of fact and conclusions of law, makes no reference to such matters, nor is there any finding upon such issues of fact, if they were submitted. Ordinarily where there is no statement of facts in the record, the appellate court, to sustain a judgment, will presume everything to have been proved which was susceptible of legal proof under the pleadings; but this rule is only applicable where there is neither statement of facts nor findings of fact and conclu-

sions of law by the court, and it is not applicable where the findings of fact and conclusions of law were filed, appealed and duly excepted to, since the law authorizes an appeal from such findings alone, and generally entitles the appellant to have the correctness of the legal conclusions on which the judgment rests tested by the facts stated as their basis."

[8, 9] A careful scrutiny of the court's findings we think will disclose that the trial court nowhere expressly finds that appellant had notice of the charges upon which the board of commissioners proposed to act, nor does he find that appellant had an opportunity to be heard upon such matters. These things can only be implied from the court's findings that appellant was called before the board and that the removal resolution was called to his attention. But we are of opinion that the recitation of these facts in the court's findings will not justly warrant the conclusion sought to be derived from them. It is to be observed that the only specification of "cause" for the proposed removal contained in the resolution was that appellant was "incompetent." It seems evident that the term "incompetent" is generic in its meaning, and within and of itself conveys no information of the particular act of commission, or omission, or want of qualification which will authorize the conclusion that the individual or officer having such status or guilty of such act or omission is incompetent. We quote the following definitions of the term "incompetency" from Words and Phrases, First Series, vol. 4, p. 3508:

1. "The term 'incompetency,' as used in the statute providing for the removal of the assignees in insolvency for incompetency and misconduct, has no technical meaning and the two words are intended to embrace all the reasons for which an assignee ought to be removed. In re Cohn, 78 N. Y. 252."

2. "'Incompetency,' as used in Sp. Laws 1891, p. 70, creating a police commission for the city of Galveston, and investing it with exclusive jurisdiction to determine all charges against police officers for incompetency, is sufficiently broad to include the inability of a police officer to read or write the English language. Steinback v. City of Galveston (Tex. Civ. App.) 41 S. W. 822."

In chapter 2, title 98, of our Revised Statutes relating to the removal of county and certain district officers, article 6032 of the chapter thus defines incompetency:

"By 'incompetency,' as used in this title, is meant gross ignorance of official duties, or gross carelessness in the discharge of them; or an officer may be found to be incompetent when, by reason of some serious physical or mental defect, not existing at the time of his election, he has become unfit or unable to discharge promptly and properly the duties of his office."

As seems to have been well stated by our Supreme Court in the case of Gordon v. State, supra:

" 'General allegations of incompetency' or unfitness constitute no sufficient cause [for removal]."

[10] How, then, can it be justly held that upon the mere presentation of the resolution appellant was notified of any particular delinquency upon which the resolution was based? It seems evident that in the minds of the commissioners specific delinquencies were relied upon as sufficient to authorize appellant's removal. This is very clearly disclosed by the answer of appellees in this case. As therein specified, the grounds for removal were, in substance, false statements to one or more of the commissioners, made to induce an allowance out of the city's moneys for his own use; unauthorized demands for an allowance to cover certain expenses incurred by appellant in a journey in his own interest; an effort to bribe the city secretary to use his influence to secure a voucher, or vouchers, for the moneys sought, and also for gross inattention and neglect of his official duties relating to litigation of the city and to an inability to afford the commissioners legal advice upon legal questions upon which they could safely act. It is nowhere alleged that these things, or any one of them, were called to the attention of appellant at the time of his appearance before the commissioners, nor does the court so find. Nor do appellees plead that appellant waived his right to notice and a hearing, nor does the court find that there was such waiver. On the contrary, it seems reasonably plain from a consideration of the answer that the commissioners, in good faith, no doubt, as the court finds, entertained the conception that notice and a hearing was not necessary in order to authorize his removal, but that they had a right to do this at their own will, and that the purpose of the commissioners in calling appellant before them was merely to afford him an opportunity to resign. He was called upon to consider nothing else. As illustrating this view, we quote from the answer herein which follows a recitation of appellant's delinquencies, viz.:

"Respondents then being convinced that relator was incompetent both morally and mentally to fill the office to which he had been appointed, determined to remove him, should he fail to resign, an opportunity for which they offered him, but the relator refused. Thereupon respondents being convinced from their construction of the charter of the city of Fort Worth that they were authorized by its terms to remove the relator from the office of corporation counsel for incompetency and the corrupt proceedings hereinabove mentioned, advised relator of their intention to do so after being granted 24 hours to consider such proposition."

It cannot, therefore, be said from the record in this case, we think, that appellant

had reasonable opportunity to be heard thereon.

[11] A further question presented by one of appellee's contentions also seems serious. The contention is based on paragraph 6 of the court's findings of fact, and is to the effect that a writ of mandamus, which is a well-recognized remedy in actions of this kind, will not issue to restore one illegally removed from office, where it would be useless; the argument being that, inasmuch as the trial court has found, in effect, that the evidence before him was such as to warrant the conclusion arrived at by the commissioners in good faith that appellant was in fact incompetent, as specified in the order of removal, it would be a vain thing and useless to restore appellant to his office when it is evident that the commissioners would immediately remove him. A number of cases giving force to this contention will be found in note 2 to the case of State ex rel. Moyer v. Baldwin, 77 Ohio St. 532, 83 N. E. 907, 19 L. R. A. p. 1. A number of text-writers also state, citing cases, that a mandamus will not lie in any case where it would be fruitless or useless. We have examined quite a number of the cases, all that we have had time and opportunity to examine.

In the case of Wilson v. Blake, 169 Cal. 449, 147 Pac. 129, it was held that the writ would not issue to compel the city counsel to canvass votes cast at a city election, where it was undisputed that the ballots were void for want of compliance with charter provisions.

In State v. Ray, 47 Mont. 570, 133 Pac. 961, Ann. Cas. 1915C, 130, the applicant for the writ sought to compel the register of public lands to issue to her a certificate of purchase, but the court denied the application on the ground that, inasmuch as the duty of issuing the certificate was the joint duty of the register and the Governor, and as neither could act effectually without the other, and as there had been no demand upon the Governor, the issuance of the writ would have been ineffectual as against the Governor, who was not a party defendant.

In the case of People v. Board of State Canvassers, 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646, the court denied an application for the writ to compel the issuance of a certificate of an election to the applicant on the ground that it appeared that the applicant was ineligible.

In these cases, however, and all others that we have had opportunity to examine, the facts were undisputed, and hence must necessarily be the same before whatever court or tribunal they might be submitted, but we think in this respect they are distinguishable from the one before us. The only tribunal empowered under the city charter to determine the existence of the charges and to give effect thereto by removal is the board of city commissioners, and not the district court which tried this case. The district court only had jurisdiction and power to determine whether or not the removal had been legally made in good faith and not arbitrarily, as alleged by appellees. In fact, the findings go no further than to say that the commissioners acted in good faith, and that the evidence known to them warranted their action, but the facts constituting the basis of the removal cannot be said to be undisputed. One of the commissioners, at least, voted against the resolution, and who can say that after fair notice and an opportunity to be heard appellant may not establish such denials or render such explanations of the charges against him as to satisfy other commissioners, or perhaps all of them.

In the case of Truitt v. Philadelphia, 221 Pa. 331, 70 Atl. 757, it was held that a superintendent of squares, holding under a civil service appointment, who had been removed without having been furnished with a written statement of the reasons for such action, and without having been allowed to make written answers, as required by statute, was entitled to reinstatement, notwithstanding the fact that reinstatement was a vain thing, inasmuch as the officer would be again removed in a more formal manner for causes stated in the answer. In that case, as in this, it was urged that the facts shown upon the hearing for the writ showed sufficient cause for the removal, and that therefore it would be useless to grant the writ. In disposing of these questions, we quote what was there said as having application here, to wit:

"It is contended by the defendants that a peremptory mandamus should not be awarded to reinstate the plaintiff in his position, because the answer to the alternative writ discloses a sufficient cause for the plaintiff's dismissal from the service, and, further, that his reinstatement would have no practical effect, inasmuch as the director could immediately dismiss him. This position is wholly untenable. The plaintiff is asserting a right conferred upon him by an act of the Legislature. He claims, and the pleadings disclose, that he was dismissed from the service of the city in direct violation of the civil service act of 1906. His application to the court for a mandamus requiring his reinstatement is based upon the ground that he was unlawfully dismissed from the service, and, therefore, he should be reinstated. It is not an answer to the alternative writ for the defendants to aver that the plaintiff was guilty of conduct which would warrant his removal. The statute provides that the cause shall be properly assigned and furnished him by the removing officer before his removal, and that he be given an opportunity to answer. It is not sufficient for the removing officer to dismiss an employé from the service without assigning a cause, and, when subsequently brought into court on a demand for his reinstatement, to assign the cause. The statute does not so provide, and hence the court cannot sustain such

an answer by the removing officer to an alternative writ of mandamus. Until the employé has been confronted with the charge, and has been afforded an opportunity to give a written answer, the removing officer cannot declare that a just cause of removal exists.

"The other reason assigned by the defendants, that it will be a vain thing for the court to reinstate the plaintiff because sufficient reasons for his removal exist and the director will remove him, is also without merit. To sustain that proposition we must hold that Director Clay and his superior officer, the mayor, will discharge the plaintiff regardless of the sufficiency of his answer and explanation of the charges preferred against him. This would be a palpable violation of the statute and of the oath of office of both officers. We will not therefore assume for one moment that those officials, when judicially advised of the proper interpretation of the civil service act, will not obey its command. When Director Clay furnishes the plaintiff a written statement of the reasons for the proposed removal, the latter will have an opportunity to reply. It will then be the duty of the director to make an investigation, and determine whether the accusations against the officer or employé are well founded or groundless. He cannot, as a matter of course, discharge him. He must act upon the facts as they are made to appear to him; and, if the plaintiff meets and refutes the charges against him, the duty of the director is to retain the plaintiff in the service of the city. If the charges are shown to be true it is then equally the duty of the director to remove the plaintiff and protect the city against an inefficient or unfaithful employé. The argument therefore of the defendants' counsel, that the reinstatement of the plaintiff will be vain because the director will at once discharge him reflects upon the director as an officer and if we were to so hold, we would be assuming that the director would not in good faith and as required by his official oath make a full and fair investigation of the charges preferred against the plaintiff and base his subsequent action in removing or refusing to remove him solely upon the facts as disclosed by the investigation. The statute imposes this duty upon the director, and we cannot assume that it will not in good faith be performed.

"We are of opinion that the plaintiff was illegally removed from his position as superintendent of squares in the city of Philadelphia, and that the court below was right in issuing a peremptory writ of mandamus requiring the defendants to reinstate him in the position from which he was removed."

[12] As applied to the facts of this case, we approve the reasoning of the Pennsylvania court, and on the whole conclude that appellant was illegally removed, and that the writ of mandamus should have issued requiring his restoration. It must be assumed that the city commissioners, in originally appointing appellant as corporation counsel in the performance of their duties as representatives of the city, made due inquiry and examination into the eligibility and qualifications of the appellant to fill the office to which he was appointed. They did appoint

him in good faith, as we assume, for a fixed period of two years, as provided by the charter. Appellant thus secured the legal right to the office and to all of its honors and emoluments, and was entitled thereto during the term of his appointment, unless he was legally removed. Doubtless, the removal order was passed under a misconstruction of the terms of the city charter by the members of the board. But article 1, section 13, of our Constitution provides, among other things, that:

"All courts shall be open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

Section 19, article 1, reads:

"No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

These provisions are woven into the fiber of our laws and crystallized in the conscience of our judges and in harmony therewith we finally conclude that the relator was not granted the rights and privileges to which he was entitled under the law, and that he was illegally removed, and hence that the writ of mandamus applied for should be issued commanding his reinstatement. It may be that upon restoration, appellant will immediately be removed from his office as suggested, but, if so, and it shall be done in a good-faith exercise of the powers of the board of city commissioners, and after appellant shall have had reasonable notice and a hearing, if he so desires, upon the charges against him, then it can be said that the removal has been in accordance with the due course of the law of the land, and neither appellant nor any other person can justly complain. As we have considered the case, however, the issues involved are more important than the interest or wishes of the individual litigants, and we know of no more important and solemn duty on our part than to carefully guard and protect, as far as we can, the legal and constitutional rights of the individual from all encroachments by an unwarranted exercise of delegated authority.

It is accordingly ordered that the judgment below be reversed, and the cause remanded, with instructions to the trial court to issue the writ of mandamus as prayed for, and that appellees herein be taxed with all costs of the proceedings.

BUCK, J., recused, not sitting.

On Motion for Rehearing.

CONNER, C. J. That notice of the charges and an opportunity to be heard thereon is to be read into the section of the chapter authorizing the removal of the cor-

poration counsel is not seriously questioned. Indeed, it cannot be, we think under the authorities cited in our original opinion and many others that might be cited to the same effect. It only remains, therefore, to determine whether such notice and opportunity was given. It was not so alleged by appellees, and not so found by the trial court. It was alleged and found that appellant was called before the board of city commissioners, and a resolution to remove was read in his hearing. Not only was such resolution legally insufficient as notice of any specific charge of incompetency, as we pointed out in our original opinion (see, also, on this point People v. Starks, 33 Hun, 384, where an officer was notified that the board deemed him "incompetent for the proper and credible performance of his duties," and it was held that no cause for removal was specified), but it is evident from the record as a whole that such call of appellant and such reading of the resolution was not intended as a presentment of the acts of incompetency relied upon, nor as an opportunity to meet charges of that character, but was intended merely and simply as offering appellant an opportunity to resign, and thus avoid the damage and odium naturally arising from an open discharge. Evidently the commissioners at the time were laboring under the impression that neither notice nor opportunity for a hearing was required, but that their power to remove was within their unrestricted and unregulated discretion. This is made apparent from the city's answer in this case. We quote a part of paragraph 4 of the city's answer as so showing:

"These respondents admit that section 12 of chapter 1 of the charter of the city of Fort Worth is correctly pleaded in paragraph B of subdivision 4 of relator's petition, and with great respect they show unto your honor that by virtue of the terms of section 30 of chapter 11 of the said charter, pleaded by relator in paragraph 3 of subdivision 4, of his petition, the corporation counsel of the city of Fort Worth is removable by the board of commissioners of said city at their discretion for incompetence, corruption, malconduct, malfeasance, or nonfeasance in office. These respondents admit that no charges in writing of incompetence, corruption, malconduct, malfeasance on the part of relator were filed with the board of commissioners, and that no copy of any charges was served upon relator, and that relator was not advised to be present with his witnesses in respect to any charges; and they allege the facts to be that under the terms of the charter of the city of Fort Worth, pleaded by the relator, and existing, they were not required to do any of those things, but were vested with full power and authority to remove the corporation counsel at their discretion, for incompetence, corruption, malfeasance or nonfeasance in office, and they allege the facts to be that the relator herein was, as will be hereinafter more specifically pleaded, incompetent and guilty of corruption, malcon-

duct, malfeasance, and nonfeasance in office, all within the knowledge of the board of commissioners of the city of Fort Worth, upon which they acted."

We accordingly think we must adhere to the conclusion on this subject expressed in our original opinion.

[13] Nor do we think it can be justly said that due notice and opportunity was waived. As stated in our original opinion, there is no plea or finding of waiver, and with the conception entertained by the commissioners of their powers, as evidenced by their answer herein, it is apparent that relator stood helpless before the commissioners. The matter was apparently predetermined. But one privilege was presented—that was to resign. It seems altogether improbable from the record that the notice of hearing, contemplated by the charter provision authorizing removal, would have been accorded. We think we may analogize the question with the decision of a like question in the case of Haverbekken v. Hale, County Judge, 109 Tex. 106, 204 S. W. 1162. That was a proceeding for the establishment of a public road, and it was held by our Supreme Court that neither Haverbekken's personal appearance before the jury of view, nor before the commissioners' court, when it made its final order, amounted to a waiver of the notice required in such cases, since it did not secure to him the same rights he would have had if such notice had been given. We, therefore, are yet unwilling to deprive relator of his clear constitutional rights on the ground that the record shows that he waived them.

[14] It was suggested in the oral argument on the submission of the motion for rehearing, but not otherwise presented, that the judgment below could not be disturbed for the reason that there is no finding by the trial court to the effect that relator was in fact in all things duly competent and qualified to act as corporation counsel. The suggestion rests upon the contention that the applicant for a writ of mandamus, as in cases of injunction, must anticipate and answer every objection which may be urged against the application, and the cases of Houston Tap & B. B. Co. v. Randolph, 24 Tex. 317, Johnson v. Elliott (Tex. Civ. App.) 168 S. W. 968, and Watkins v. Huff (Tex. Civ. App.) 63 S. W. 922, have been called to our attention in support of the suggestion. The principle embodied in the contention must be freely conceded. In disposing of the question so presented, we will first observe that it may be doubted whether, in order to avail himself of the right of notice of charges against him and of an opportunity to be heard in answer thereto, it was necessary for him to assume the burden of alleging or proving his qualification to hold the office. His qualification had been theretofore duly affirmed by

the formal action of the board of commissioners in appointing him, and before his removal could legally take place it was necessary, as we have seen, that he have notice of any charge of disqualification or incompetency upon which the commissioners based their proposed action of removal. Nevertheless, the relator in his application for the writ of mandamus made full and complete allegations of his qualification and competence to fill the office to which he had been appointed, and thus met the rule announced in the cases cited in support of the suggestion under consideration. The case of Railway v. Randolph, supra, went off on demurrer to the petition for mandamus. It was held, as already stated, that the petition should negative or meet all legally supposable defenses to the application. The same is true of the case of Johnson v. Elliott, supra. Neither of these cases go so far as to hold that upon a trial of the application for the writ of mandamus the burden of proof is upon the applicant, to sustain these allegations. Naturally and legally the burden is upon those resisting the application. It is true that in the case of Watkins v. Huff, 63 S. W. 922, the Court of Civil Appeals of San Antonio, after affirming the general principle that a plaintiff in a mandamus proceeding is required to anticipate and answer every possible objection or argument in fact, which it may be expected will be urged against the claim, held on original hearing that the judgment awarding the writ should be reversed on the ground that there was neither allegation nor finding that there were school funds sufficient to meet the contract in that case sought. On motion for rehearing, however, the judgment was affirmed, the court, among other things, stating that—

"It is true that there is no allegation in the petition, in terms, that the contract would not create a deficiency in the school fund. There is, however, the general allegation that the contract was in all things regular and legal. A careful examination of the answer in reference to the matter of deficiency develops that appellant does not claim that, in view of other obligations, there would be no money whatever to apply to this contract. The allegations of the answer go this far only, viz. that there was not money in the funds of the particular year sufficient to satisfy this salary at the rate and for the time specified."

No emphasis was given to the fact stated in the original opinion that the court failed to find that the contract would not create a deficiency. The distinction that we are now seeking to point out is that the rule invoked in support of the suggestion under consideration is one of pleading, and not one relating to the proofs required upon the part of an applicant for mandamus. As illustrating the distinction, we cite the case of Wilson v. Hawthorne, 14 Colo. 534, 24 Pac. 549, 20 Am. St. Rep. 290. Among other things, it was there said:

"The showing of merits should not be required to the extent of compelling a party against whom a judgment has been obtained, without jurisdiction over his person, to come into a court of equity, and assume the burden of disproving his liability. On the contrary, a party thus circumstanced is entitled to the maintenance of his right to defend against such supposed liability in an action wherein his adversary must assume the burden of proof. This distinction is important in all cases, and in many may be absolutely controlling. The allegation of merits, though not traversible, may very properly be required as an earnest of good faith from the party seeking relief from a supposed unauthorized judgment; and as a rule, under our system, such pleading may be required to be verified. If a pleading be demurred to for want of such averment, it may be dismissed, unless amended; but in this case the absence of the averment, not having been made a ground of demurrer, did not justify the dismissal of the cross-complaint. Freem. Judgm. § 498; Bell v. Williams, 1 Head, 229; Ryan v. Boyd, 33 Ark. 778; Crawford v. White, 17 Iowa, 560."

In further opposition to the suggestion under discussion, we wish to observe that, while a potential power has been given the city commission to remove the corporation counsel, the proceeding is a special one, similar, it may be said, to the powers conferred upon a commissioners' court to open public roads. It may be invoked only when the prescribed proceedings are followed; such proceedings being jurisdictional in their nature. Thus, in the Haverbekken Case, supra, it was held, in effect, that a failure of eight freeholders of the precinct to sign the petition for the road and to give 20 days' notice thereof rendered void the action of the commissioners in ordering the road to be opened. So here, we think, the action of the commissioners, without legally assigned cause and without an opportunity for a hearing, was void, and it is not our understanding that in such cases, in order to set aside the void proceeding, the burden rests upon the complainant to prove a meritorious defense. Thus in 15 R. C. L. p. 719, paragraph 171, it is said:

"The rule requiring an affidavit of merits on an application to set aside a judgment does not apply where it was grossly irregular for the judgment to have been entered. If a judgment is void by reason of an entire lack of jurisdiction of the party, it is a nullity, and the party affected is entitled to have it set aside whenever such fact is made to appear, and without proof or suggestion of merits."

In the case of San Bernardo Townsite Co. v. Hocker (Tex. Civ. App.) 176 S. W. 644, it was held that a void judgment may be enjoined without showing a defense against the cause of action, and that in determining

whether such judgment is void the entire record may be looked to, and that when from the entire record it appears that the judgment is void, it may be attacked by injunction without pleading or showing a meritorious defense. To the same effect is the decision of our Supreme Court in the case of August Kern Barber Supply Co. v. Freeze, 96 Tex. 513, 74 S. W. 303.

Under the city charter the sole tribunal authorized upon the performance of the prerequisites to remove the corporation counsel is the city commission. No appeal from their conclusion is provided for, and the district court was without any jurisdiction to determine the existence or nonexistence of the charges alleged in the respondent's answer, except, possibly, in so far as it was necessary to determine whether as alleged by the relator, their action was induced by ill will and spite, and the trial court made no attempt to go beyond this. He made no finding upon any issue of relator's incompetency, and to now hold that because the relator has not presented to this court a finding in his favor on any such issue is in effect to transfer the power from the city commission to the district court. The essential object of this suit was to determine, not whether the relator was competent or incompetent, but whether, after having been duly appointed as corporation counsel, he had been duly removed from his office in accordance with the law of the land. We conclude, therefore, that the suggestion we have been discussing, must be overruled.

Other questions presented in the motion for rehearing we think have been sufficiently disposed of in our original opinion. The motion for rehearing will accordingly be overruled.

[15] For the first time respondents also present an independent motion to dismiss relator's appeal. The motion is based upon two grounds. It is alleged that the relator at the time of his appointment, was not eligible to the office of corporation counsel under section 6 of the charter of the city, which provides:

"No person shall be eligible to the office of corporation counsel, whether the same be elected by popular vote or appointed at the hands of the board of commissioners, who is not licensed to practice law in the Supreme Court of the state of Texas, and in the federal courts."

Under this portion of section 6 of the charter it is alleged that the relator at the time of his appointment was not licensed to practice law in the Circuit and Supreme Courts of the United States.

The second ground of the motion to dismiss is also predicated upon section 6 of the charter, which further reads that:

"The mayor and each of the said five commissioners shall not be less than twenty-five years of age, citizens of the United States, and for three years immediately preceding their election, residents of the city of Fort Worth, qualified voters and property owners and taxpayers in said city. Other city officers made elective under this act by popular vote, shall be qualified voters and bona fide residents of the city of Fort Worth for two years next preceding their election."

It is alleged that relator was disqualified under this portion of the section for the reason that he was not a bona fide resident of the city of Fort Worth for the two years next preceding his appointment and the allegations of disqualification as above set forth are supported by the affidavit of Hon. E. R. Cockrell, mayor of the city, attached to the motion as an exhibit.

It seems obvious to us that the questions so presented go to the merits of the case, and in no wise affect the jurisdiction of this court to determine the appeal. Moreover, no such ground of ineligibility or want of qualification was set up by the respondents in their answer to the application for the writ. The relator distinctly alleged in his application that he was at the time of his appointment "in all respects duly eligible therefor." The respondents, neither by exception nor by allegations in their answer, set up any such grounds as are set up in the motion to dismiss, nor have we any finding of the court on any such issue. So that we think it clear that the issues presented in the motion are not now available to respondents in this court.

The motion to dismiss is accordingly overruled.

BUCK, J., recused and not sitting.